# UNITED STATES *v.* FAUSTO

No. 86–595.   Argued October 7, 1987—Decided January 25, 1988

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, and O'CONNOR, JJ., joined. BLACKMUN, J., filed a concurring opinion, *post*, p. 455. STEVENS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 455.

*Christopher J. Wright* argued the cause for the United States. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Cohen,* and *Robert A. Reutershan.*

*John M. Nannes,* by invitation of the Court, 480 U. S. 904, argued the cause and filed a brief as *amicus curiae* in support of the judgment below. Respondent filed a brief *pro se.**

JUSTICE SCALIA delivered the opinion of the Court.

Respondent Joseph A. Fausto, an employee of the Department of the Interior Fish and Wildlife Service (FWS), was suspended from his job for 30 days because of unauthorized use of a Government vehicle. The United States Court of Appeals for the Federal Circuit held that he could maintain a suit for backpay in the United States Claims Court alleging that his suspension was in violation of Department of the Interior regulations. We granted certiorari to decide whether the Civil Service Reform Act of 1978 (CSRA or Act), Pub. L.

---

*Briefs of *amici curiae* urging affirmance were filed for the American Federation of Government Employees, AFL–CIO, by *Mark D. Roth* and *Kevin M. Grile;* and for Joseph D. Finn et al. by *Irving Kator, Joseph B. Scott,* and *Michael J. Kator.*

95–454, 92 Stat. 1111 *et seq.* (codified, as amended, in various sections of 5 U. S. C. (1982 ed. and Supp. IV)), which affords an employee in respondent's situation no review of the agency's decision, precludes such a Claims Court suit.

## I

Respondent was hired by FWS in January 1978, as an administrative officer for the Young Adult Conservation Corps camp in Virginia Beach, Virginia. His position was in the excepted service,[1] and was to last for the duration of the Conservation Corps program at Virginia Beach, but not beyond September 30, 1982.

In November 1980, FWS advised respondent that it intended to dismiss him for a number of reasons, including unauthorized use of a Government vehicle. After respondent replied to the charges, he received a memorandum from FWS informing him that he would be removed effective January 16, 1981. That memorandum did not advise respondent of his grievance rights under Department of the Interior regulations, which included the right to a formal hearing con-

---

[1] The CSRA divides civil service employees into three main classifications that can be generally described as follows: "Senior Executive Service" employees are those who occupy high-level positions in the Executive Department, but for whom appointment by the President and confirmation by the Senate is not required. 5 U. S. C. § 3132(a)(2). "Competitive service" employees are all other employees for whom nomination by the President and confirmation by the Senate is not required, and who are not specifically excepted from the competitive service by statute or by statutorily authorized regulation. § 2102. "Excepted service" personnel are the remainder—those who are in neither the competitive service nor the Senior Executive Service. § 2103. Respondent's position was in the excepted service because it had been excluded from the competitive service by authorized Civil Service Commission (now Office of Personnel Management) regulation. 5 CFR § 213.3102(hh) (1978).

Within each of the three classifications of employment, the Act accords preferential treatment to certain veterans and their close relatives—so-called "preference eligibles." § 2108. Respondent, who is not a preference eligible, is referred to as a nonpreference member of the excepted service.

ducted by a grievance examiner. See Department of the Interior Federal Personnel Manual—231, pt. 370 DM, ch. 771, subch. 3, 3.22A (May 4, 1981).[2]

Respondent sought review of his removal with the Merit Systems Protection Board (MSPB), which dismissed his appeal in August 1981, on the ground that under the CSRA a nonpreference eligible in the excepted service has no right to appeal to the MSPB. *Fausto* v. *Department of Interior*, No. PH 075281102271 (M. S. P. B. Aug. 27, 1981), aff'd, 738 F. 2d 454 (CA Fed. 1984) (judgment order). On September 18, 1981, FWS permanently closed the camp at Virginia Beach. In March 1982, in response to an inquiry initiated on behalf of respondent, FWS admitted that respondent had not been informed of his grievance rights, and offered him the opportunity to challenge his removal. Respondent filed a formal grievance, and on June 30, 1982, FWS concluded, based on the administrative file and without a hearing, that respondent should not have been removed. FWS found that most of the charges against respondent were *de minimis* and warranted no penalty, but imposed a 30-day suspension for misuse of a Government vehicle. See 31 U. S. C. § 638a(c)(2) (1976 ed.) (now codified at 31 U. S. C. § 1349(b)). FWS offered respondent backpay from February 15, 1981, the date his 30-day suspension would have ended, through September 18, 1981, the date the camp was closed.

Respondent filed an appeal with the Department of the Interior, claiming that his suspension was unwarranted and that he was entitled to additional backpay for the period covered by the suspension as well as for the period from the date on which the camp closed through the date on which FWS admitted that he should not have been removed. The Secretary of the Interior upheld FWS's decision.

---

[2] Both parties have characterized the grievance rights included in the Department of the Interior Federal Personnel Manual as agency regulations. For purposes of this case we assume, without deciding, that they are such.

In February 1983, respondent filed the present action under the Back Pay Act, 5 U. S. C. § 5596, in the Claims Court. The Claims Court dismissed, holding that the CSRA comprised the exclusive catalog of remedies for civil servants affected by adverse personnel action. 7 Cl. Ct. 459, 461 (1985). The Federal Circuit reversed and remanded, 783 F. 2d 1020 (1986), holding that although the CSRA did not afford nonpreference excepted service employees a right of appeal to the MSPB, it did not preclude them from seeking the Claims Court review traditionally available under the Tucker Act, 28 U. S. C. § 1491, based on the Back Pay Act. 783 F. 2d, at 1022–1023. On the merits it found Fausto's suspension wrongful and awarded backpay for the period of the suspension. *Id.*, at 1023–1024. The Court of Appeals denied the Government's petition for rehearing of the case en banc, but issued a second panel opinion reaffirming its decision. 791 F. 2d 1554 (1986).

The Government petitioned for certiorari on the question whether a nonveteran member of the excepted service may obtain, under the Tucker Act, judicial review of adverse personnel action for which the CSRA does not provide him a right of review.

## II

We have recognized that the CSRA "comprehensively overhauled the civil service system," *Lindahl* v. *OPM*, 470 U. S. 768, 773 (1985), creating an elaborate "new framework for evaluating adverse personnel actions against [federal employees]," *id.*, at 774. It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review. No provision of the CSRA gives nonpreference members of the excepted service the right to administrative or judicial review of suspension for misconduct. The question we face is whether that withholding of remedy was meant to preclude judicial review for those employees, or rather merely to leave

them free to pursue the remedies that had been available before enactment of the CSRA. The answer is to be found by examining the purpose of the CSRA, the entirety of its text, and the structure of review that it establishes. See *Lindahl, supra,* at 779; *Block* v. *Community Nutrition Institute,* 467 U. S. 340, 345 (1984).

A leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the "outdated patchwork of statutes and rules built up over almost a century" that was the civil service system, S. Rep. No. 95–969, p. 3 (1978). Under that pre-existing system, only veterans enjoyed a statutory right to appeal adverse personnel action to the Civil Service Commission (CSC), the predecessor of the MSPB. 5 U. S. C. § 7701 (1976 ed.). Other employees were afforded this type of administrative review by Executive Order. Exec. Order No. 11491, § 22, 3 CFR 874 (1966–1970 Comp.), note following 5 U. S. C. § 7301 (1976 ed.) (extending CSC review to competitive service employees). Still others, like employees in respondent's classification, had no right to such review. As for appeal to the courts: Since there was no special statutory review proceeding relevant to personnel action, see 5 U. S. C. § 703, employees sought to appeal the decisions of the CSC, or the agency decision unreviewed by the CSC, to the district courts through the various forms of action traditionally used for so-called nonstatutory review of agency action, including suits for mandamus, see, *e. g., Taylor* v. *United States Civil Service Comm'n,* 374 F. 2d 466 (CA9 1967), injunction, see, *e. g., Hargett* v. *Summerfield,* 100 U. S. App. D. C. 85, 243 F. 2d 29 (1957), and declaratory judgment, see, *e. g., Camero* v. *McNamara,* 222 F. Supp. 742 (ED Pa. 1963). See generally R. Vaughn, Principles of Civil Service Law § 5.4, p. 5–21, and nn. 13–17 (1976) (collecting cases). For certain kinds of

personnel decisions, federal employees could maintain an action in the Court of Claims of the sort respondent seeks to maintain here.   See, *e. g., Ainsworth* v. *United States,* 185 Ct. Cl. 110, 399 F. 2d 176 (1968).

Criticism of this "system" of administrative and judicial review was widespread.   The general perception was that "appeals processes [were] so lengthy and complicated that managers [in the civil service] often avoid[ed] taking disciplinary action" against employees even when it was clearly warranted.   S. Rep. No. 95–969, at 9.   With respect to judicial review in particular, there was dissatisfaction with the "wide variations in the kinds of decisions . . . issued on the same or similar matters," *id.,* at 63, which were the product of concurrent jurisdiction, under various bases of jurisdiction, of the district courts in all Circuits and the Court of Claims. Moreover, as the Court of Appeals for the District of Columbia Circuit repeatedly noted, beginning the judicial process at the district court level, with repetition of essentially the same review on appeal in the court of appeals, was wasteful and irrational.   See *Polcover* v. *Secretary of Treasury,* 155 U. S. App. D. C. 338, 341–342, 477 F. 2d 1223, 1226–1228 (1973).

Congress responded to this situation by enacting the CSRA, which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration.   See S. Rep. No. 95–969, at 4. Three main sections of the CSRA govern personnel action taken against members of the civil service.   In each of these sections, Congress deals explicitly with the situation of nonpreference members of the excepted service, granting them limited, and in some cases conditional, rights.

Chapter 43 of the CSRA governs personnel actions based on unacceptable job performance.   It applies to both com-

petitive service employees and members of the excepted service. 5 U. S. C. § 4301. It provides that before an employee can be removed or reduced in grade for unacceptable job performance certain procedural protections must be afforded, including 30 days' advance written notice of the proposed action, the right to be represented by an attorney or other representative, a reasonable period of time in which to respond to the charges, and a written decision specifying the instances of unacceptable performance. § 4303(b)(1). Although Congress extended these protections to nonpreference members of the excepted service, it denied them the right to seek either administrative or judicial review of the agency's final action. Chapter 43 gives only competitive service employees and preference eligible members of the excepted service the right to appeal the agency's decision to the MSPB and then to the Federal Circuit. § 4303(e).

Chapter 23 of the CSRA establishes the principles of the merit system of employment, § 2301, and forbids an agency to engage in certain "prohibited personnel practices," including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers. § 2302. Nonpreference excepted service employees who are not in positions of a confidential or policymaking nature are protected by this chapter, § 2302(a)(2)(B), and are given the right to file charges of "prohibited personnel practices" with the Office of Special Counsel of the MSPB, whose responsibility it is to investigate the charges and, where appropriate, to seek remedial action from the agency and the MSPB. § 1206.

Chapter 75 of the Act governs adverse action taken against employees for the "efficiency of the service," which includes action of the type taken here, based on misconduct. Subchapter I governs minor adverse action (suspension for 14 days or less), §§ 7501–7504, and Subchapter II governs major

adverse action (removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less), §§ 7511–7514. In each subchapter, covered employees are given procedural protections similar to those contained in Chapter 43, §§ 7503(b), 7513(b), and in Subchapter II covered employees are accorded administrative review by the MSPB, followed by judicial review in the Federal Circuit. §§ 7513(d), 7703. The definition of "employee[s]" covered by Subchapter II (major adverse action) specifically includes preference eligibles in the excepted service, § 7511(a)(1)(B), but does not include other members of the excepted service. The Office of Personnel Management is, however, given authority to extend coverage of Subchapter II to positions in the excepted service that have that status because they have been excluded from the competitive service by OPM regulation. § 7511(c).

The Court of Appeals viewed the exclusion of nonpreference members of the excepted service from the definitional sections of Chapter 75 as congressional silence on the issue of what review these employees should receive for the categories of personnel action covered by that chapter, including a suspension of the duration at issue here, which would come within Subchapter II. The court therefore found respondent free to pursue whatever judicial remedies he would have had before enactment of the CSRA. We view the exclusion quite differently. In the context of the entire statutory scheme, we think it displays a clear congressional intent to deny the excluded employees the protections of Chapter 75 — including judicial review — for personnel action covered by that chapter.

In *Block* v. *Community Nutrition Institute*, 467 U. S., at 345–348, we observed that, under the Agricultural Marketing Agreement Act of 1937, the omission of review procedures for consumers affected by milk market orders, coupled with

the provision of such procedures for milk handlers so affected, was strong evidence that Congress intended to preclude consumers from obtaining judicial review. Similarly, in *United States* v. *Erika, Inc.*, 456 U. S. 201 (1982), we found that in the context of the "precisely drawn provisions" of the Medicare statute, the provision of judicial review for awards made under Part A of the statute, coupled with the omission of judicial review for awards under Part B, "provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims." *Id.*, at 208 (citations omitted). The same type of analysis applies here. The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter. Their exclusion from the scope of those protections can hardly be explained on the theory that Congress simply did not have them in mind, since, as noted earlier, Congress specifically included in Chapter 75 *preference eligible* excepted service employees, § 7511(a)(1)(B), and specifically provided for optional inclusion (at the election of OPM) of *certain* nonpreference excepted service employees with respect to *certain* protections of the chapter, including MSPB and judicial review, § 7511(c). (Respondent, incidentally, falls within the category eligible for that optional inclusion, see *ibid.;* 5 CFR § 213.3102(hh) (1978), which OPM has chosen not to invoke.) It seems to us evident that the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory

entitlement to review for adverse action of the type governed by Chapter 75.

This conclusion emerges not only from the statutory language, but also from what we have elsewhere found to be an indicator of nonreviewability, the structure of the statutory scheme. *Block* v. *Community Nutrition Institute, supra,* at 345; see *Southern R. Co.* v. *Seaboard Allied Milling Corp.,* 442 U. S. 444, 456–459 (1979). Two structural elements important for present purposes are clear in the framework of the CSRA: First, the preferred position of certain categories of employees — competitive service employees and "preference eligibles" (veterans). See 5 U. S. C. §§ 4303(e), 7501(1), 7503, 7511(a)(1), 7513. This is of course not an innovation of the CSRA, but continuation of a traditional feature of the civil service system. See Veterans Preference Act of 1944, ch. 287, § 14, 58 Stat. 390; Exec. Order No. 10988, § 14, 3 CFR 527 (1959–1963 Comp.). The second structural element is the primacy of the MSPB for administrative resolution of disputes over adverse personnel action, 5 U. S. C. §§ 1205, 4303(e), 7513(d), 7701 (1982 ed. and Supp. IV), and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review, § 7703. This enables the development, through the MSPB, of a unitary and consistent Executive Branch position on matters involving personnel action, avoids an "unnecessary layer of judicial review" in lower federal courts, and "[e]ncourages more consistent judicial decisions . . . ." S. Rep. No. 95–969, at 52; see *Lindahl* v. *OPM,* 470 U. S., at 797–798.

Interpreting the exclusion of nonpreference excepted service personnel from Chapter 75 as leaving them free to pursue other avenues of review would turn the first structural element upside down, and would seriously undermine the second. As to the former: Under respondent's view, he would be able to obtain judicial review of a 10-day suspension for

misconduct, even though a competitive service employee would not, since Chapter 75 makes MSPB review, and hence judicial review, generally unavailable for minor adverse personnel action, including suspensions of less than 14 days.[3] Moreover, this inverted preference shown to nonpreference excepted service employees would be shown as well to probationary employees, another disfavored class. See 5 U. S. C. § 4303(f)(2) (expressly excluding probationary employees from review under Chapter 43); § 7511(a)(1)(A) (expressly excluding probationary employees from Chapter 75); S. Rep. No. 95–969, at 45 ("It is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during the [probationary period]"). Since probationary employees, like nonpreference excepted service employees, are excluded from the definition of "employee" for purposes of Chapter 75, respondent's theory that persons so excluded retain their pre-CSRA remedies must apply to them as well. And as it happens, the very case relied upon by the Federal Circuit as demonstrating the pre-CSRA right to Court of Claims review involved a probationary employee. See *Greenway* v. *United States*, 163 Ct. Cl. 72 (1963).[4]

---

[3] This assumes, of course, that competitive service employees, who *are* given review rights by Chapter 75, cannot expand these rights by resort to pre-CSRA remedies. Cf. *Pinar* v. *Dole*, 747 F. 2d 899, 910–912 (CA4 1984), cert. denied, 471 U. S. 1016 (1985); *Carducci* v. *Regan*, 230 U. S. App. D. C. 80, 82–84, 714 F. 2d 171, 173–175 (1983). Even respondent has not questioned this assumption.

[4] The dissent makes no attempt to explain these anomalies, except to assert that we have "create[d] from thin air the notion" that the CSRA affords preferred status to competitive service and preference eligible employees. See *post*, at 466. Aside from the obvious linguistic response to this assertion—that the CSRA explicitly draws distinctions between "preference" and nonpreference members of the excepted service, 5 U. S. C. § 7511(a)(1)(B)—we think it sufficient to reiterate that this preferred status is a traditional feature of the civil service system. See *supra*, at 449. This in no way means, of course, that Congress has judged nonpreference excepted service employees to be "less worthy than other federal em-

The manner in which respondent's interpretation would undermine the second structural element of the Act is obvious. First, for random categories of employees, legally enforceable employment entitlements will exist that are not subject to the unifying authority, in consistency of fact-finding as well as interpretation of law, of the MSPB. Second, for these same employees, the second layer of judicial review, which Congress meant to eliminate, would persist, see *Lindahl, supra*, at 797–798, since pre-CSRA causes of action had to be commenced in the federal courts of first instance rather than in the courts of appeals. Finally, for certain kinds of actions, these employees would be able to obtain review in the district courts and the regional courts of appeals throughout the country, undermining the consistency of interpretation by the Federal Circuit envisioned by § 7703 of the Act. Although a Tucker Act suit is appealable only to the Federal Circuit, regardless of whether it is brought in the Claims Court or in district court, see 28 U. S. C. §§ 1295(a)(2), 1295(a)(3), 1346(a)(2), actions brought under the other statutes used to obtain judicial review before the CSRA, see *supra*, at 445, would be appealable to the various regional Circuits. When, as would often be the case, particular agency action could be challenged under either the Tucker Act or one of the other bases of jurisdiction, an agency office would not know whether to follow the law of its geographical Circuit or the conflicting law of the Federal Circuit. This, and the other consequences of respondent's theory that the pre-CSRA remedies of nonpreference excepted service employees were not meant to be affected by the Act, are inherently implausible.[5]

_____

plyees," *post*, at 466, but only that it has chosen to give them less employment protection.

[5] The dissent seeks to minimize the impact of respondent's interpretation by observing that the remedy he seeks will be "limited to those instances when the agency violates its own regulations." *Ibid.* This sounds like a substantial limitation, but is in reality an insignificant one. The De-

*Amicus* contends that interpreting the CSRA to foreclose review in this case is contrary to two well-established principles of statutory construction. The first is that Congress will be presumed to have intended judicial review of agency action to be available unless there is "persuasive reason" to believe otherwise. *Abbott Laboratories* v. *Gardner*, 387 U. S. 136, 140 (1967). We agree with the principle, but find ample basis for applying the exception it contains. As we have made clear elsewhere, the presumption favoring judicial review is not to be applied in the "strict evidentiary sense," but may be "overcom[e] whenever the congressional intent to preclude review is 'fairly discernible in the statutory scheme.'" *Block* v. *Community Nutrition Institute*, 467 U. S., at 351 (quoting *Data Processing Service* v. *Camp*, 397 U. S. 150, 157 (1970)). Here, as in *Block*, we think Congress' intention is fairly discernible, and that "the presumption favoring judicial review . . . [has been] overcome by inferences of intent drawn from the statutory scheme as a whole." 467 U. S., at 349.

The other principle of statutory construction to which *amicus* appeals is the doctrine that repeals by implication are strongly disfavored, *Rodriguez* v. *United States*, 480 U. S.

partment of the Interior grievance system that is the subject of this suit not only provides to nonpreference excepted service employees in respondent's position the right to be advised of grievance procedures (which is the precise matter at issue here) but also provides that the grievance will be successful unless "management . . . establish[es] the facts it asserts by a preponderance of evidence demonstrating that its action was for such cause as would promote the efficiency of the service." Department of the Interior Federal Personnel Manual—231, pt. 370 DM, ch. 771, subch. 3, app. A–1(H) (May 4, 1981). Therefore, under respondent's analysis, a nonpreference excepted service employee in his position would be able to appeal to the courts, as a violation of agency regulations, the alleged insufficiency of the evidence to prove the acts for which he was dismissed, and the alleged failure of those acts to establish that his dismissal would promote the efficiency of the service. That would hardly be a narrow supplement to the otherwise integrated system of review established by the CSRA.

522, 524 (1987); *Regional Rail Reorganization Act Cases*, 419 U. S. 102, 133 (1974), so that a later statute will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two, *Georgia* v. *Pennsylvania R. Co.*, 324 U. S. 439, 456–457 (1945); *Wood* v. *United States*, 16 Pet. 342, 362–363 (1842). This means, *amicus* asserts, that absent an express statement to the contrary, the CSRA cannot be interpreted to deprive respondent of the the statutory remedy he possessed under the Back Pay Act.

Once again we agree with the principle, but do not find it applicable here. Repeal by implication of an express statutory text is one thing; it can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change. See, *e. g.*, *Morton* v. *Mancari*, 417 U. S. 535 (1974) (Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 U. S. C. § 2000e *et seq.* (1970 ed., Supp. II), did not negate employment preference for Indians expressly established by the Indian Reorganization Act of 1934, 48 Stat. 984, 25 U. S. C. § 461 *et seq.*). But repeal by implication of a legal disposition implied by a statutory text is something else. The courts frequently find Congress to have done this — whenever, in fact, they interpret a statutory text in the light of surrounding texts that happen to have been subsequently enacted. This classic judicial task of reconciling many laws enacted over time, and getting them to "make sense" in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute. And that is what we have here. By reason of the interpretation we adopt today, the Back Pay Act does not stand repealed, but remains an operative part of the integrated statutory scheme set up by Congress to protect civil servants. All that we find to have been "repealed" by the CSRA is the judicial interpretation of the Back Pay Act — or, if you will, the Back Pay Act's implication — allowing review in the Court of Claims of the underlying personnel decision giving rise to the claim for backpay.

To be more explicit: The Back Pay Act provides in pertinent part:

"An employee of an agency who, on the basis of a timely appeal or an administrative determination . . . is found *by appropriate authority under applicable law*, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action . . . [is entitled to back pay]." 5 U. S. C. § 5596(b)(1) (emphasis added).

Before enactment of the CSRA, regulations promulgated by the Civil Service Commission provided that a court authorized to correct, or to direct the correction of, an unjustified personnel action was an "appropriate authority" within the meaning of the Back Pay Act. 5 CFR § 550.803(c) (1968). And the Court of Claims had held (with some circularity of reasoning) that it was such a court because it had jurisdiction to award backpay. *Ainsworth* v. *United States*, 185 Ct. Cl., at 118–119, 399 F. 2d, at 181. Without disagreeing with that determination made in the context of the pre-existing patchwork scheme, see *supra*, at 444–445, we find that under the comprehensive and integrated review scheme of the CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an "appropriate authority" to review an agency's personnel determination. This does not mean that the statutory remedy provided in the Back Pay Act is eliminated, or even that the conditions for invoking it are in any way altered. Now, as previously, if an employee is found by an "appropriate authority" to have undergone an unwarranted personnel action a suit for backpay will lie. Post-CSRA, such an authority would include the agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination. It seems to us that what respondent would have us invoke is a rule akin to the doctrine that statutes in derogation of the common law will be strictly construed—that is, a presumption against any change rather than a presumption against

implicit repeal of a statute. We decline to embrace that principle.

The CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act. Accordingly, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE BLACKMUN, concurring.

I join the Court's opinion, because of the persuasive evidence it marshals for the proposition that Congress intended the CSRA to "replac[e] the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Ante*, at 445. I do not believe, nor do I read the majority opinion to suggest, that our well-established aversion to recognizing "implied" repeals of remedial provisions or of judicial review is any weaker when what is "repealed" finds its source in our cases rather than in specific statutory texts. For example, this Court long has recognized that the Constitution itself supports a private damages action against a federal official, *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971), and that the courts' common-law power to vindicate constitutional rights, see *Davis* v. *Passman*, 442 U. S. 228 (1979); *Carlson* v. *Green*, 446 U. S. 14 (1980), is not lightly to be set aside.

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Respondent claims that his 30-day suspension was imposed in violation of the procedural regulations of his employing agency and that he is therefore entitled to backpay for that

period. It is undisputed that if his claim had arisen prior to the passage of the Civil Service Reform Act of 1978 (CSRA), and if he had proved his allegations, he could have recovered his backpay in the Court of Claims. It is also undisputed that there is not a single word in either the text or the legislative history of the CSRA that purports to withdraw or curtail any judicial remedy that was previously available to employees like respondent, who do not enjoy the protections accorded to members of the competitive service or those accorded to veterans and their close relatives. It is therefore quite wrong for this Court to supplement that carefully crafted piece of legislation with an unnecessary and unenacted repealer.

To explain my profound disagreement with the Court's nontextual reading of the Act, I shall first comment on the state of the law prior to the enactment of the CSRA and then explain how that statute—whose primary focus is upon employees who are either in the competitive service or are veterans—gave certain new protections to nonpreference eligible members of the excepted service without withdrawing *any* of their pre-existing rights. Finally, I shall comment on certain flaws in the reasoning of the majority.

## I

In important respects respondent's case is similar to *Vitarelli* v. *Seaton*, 359 U. S. 535 (1959). In that case, as in this, the Department of the Interior discharged a non-tenured employee without following the procedures dictated by the Department's own regulations. In both cases it must be assumed that the employing agency had sufficient grounds for its action because an employee in the excepted service is subject to discharge without cause. As the Court noted in *Vitarelli*, petitioner was a person "who concededly was at no time within the protection of the Civil Service Act, Veterans' Preference Act, or any other statute relating to employment rights of government employees, and who, as a 'Sched-

ule A' employee, could have been summarily discharged by the Secretary at any time without the giving of a reason." *Id.*, at 539. Nevertheless, having "chosen to proceed against petitioner on security grounds, the Secretary . . . was bound by the regulations which he himself had promulgated for dealing with such cases, even though without such regulations he could have discharged petitioner summarily." *Id.*, at 539–540.

In cases following *Vitarelli*, prior to the passage of the CSRA, it was held that a nonpreference eligible excepted service employee could seek a remedy under the Tucker Act and the Back Pay Act in the former Court of Claims[1] if he or she was discharged in violation of applicable agency regulations.[2] See *Batchelor* v. *United States*, 169 Ct. Cl. 180, 184,

---

[1] The United States Court of Claims was abolished by the Federal Courts Improvement Act of 1982 (FCIA), Pub. L. 97–164, 96 Stat. 25. The FCIA created in its stead the United States Claims Court, which inherited the Court of Claims' authority to exercise general jurisdiction over Tucker Act claims. *Lindahl* v. *OPM*, 470 U. S. 768, 796 (1985).

[2] The Tucker Act, 28 U. S. C. § 1491(a)(1), provides in pertinent part:

"The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

The Back Pay Act, 5 U. S. C. § 5596(b), provides in pertinent part:

"An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

"(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—[an amount equal to back pay (less any amount earned through other employment) and reasonable attorney fees]."

As we explained in *United States* v. *Testan*, 424 U. S. 392, 398 (1976), the Tucker Act created jurisdiction in the Court of Claims to consider cer-

cert. denied, 382 U. S. 870 (1965); *Greenway* v. *United States*, 163 Ct. Cl. 72, 76 (1963); cf. *Watson* v. *United States*, 142 Ct. Cl. 749, 162 F. Supp. 755 (1958). In those cases, as in this, there was no judicial review of the merits of the executive decision to remove or suspend the excepted service employee. Such employees did not have, and do not now have, any generalized right to review of the merits of their removal. Tucker Act jurisdiction was limited to those instances in which the agency had violated its own regulations.

In contrast to the limited remedy available to employees like Vitarelli and respondent, employees protected by the Civil Service Act and the Veterans' Preference Act had a variety of administrative and judicial remedies that included a right to review of the merits of adverse personnel actions.[3] Indeed, a concern that those employees had too much protection, as well as dissatisfaction with the fact that the Civil Service Commission had both management and adjudicatory responsibilities, were among the factors that led to the enactment of CSRA. As the Court recognizes, the "general perception was that 'appeals processes [were] so lengthy and complicated that managers [in the civil service] often avoid[ed] taking disciplinary action' against employees even when it was clearly warranted. S. Rep. No. 95–969, at 9." *Ante*, at 445.[4] It is of critical importance to note that the

---

tain claims against the United States whenever a substantive right existed. The Back Pay Act supplies the substantive right to recover backpay whenever an employee is affected by an unjustified or unwarranted personnel action which leads to the withdrawal or reduction of pay and allowances. *Id.*, at 406.

[3] The right of preference eligible employees to appeal to the Civil Service Commission was granted by statute, 5 U. S. C. § 7701 (1976 ed.), whereas the rights of competitive service employees were conferred by Executive Order, see Exec. Order No. 11491, § 22, 3 CFR 874 (1966–1970 Comp.). Neither the statute nor the Executive Order applied to nonpreference eligible excepted service employees.

[4] "One of the central tasks of the civil service reform bill is simple to express but difficult to achieve: Allow civil servants to be able to be hired

appeals processes in the Civil Service Commission were not available to nonpreference eligible employees in the excepted service. Their limited right to judicial review of the question whether their employing agency had followed its own procedural regulations was not part of the problem that Congress solved by allocating the management functions of the Civil Service Commission (CSC) to the Office of Personnel Management (OPM) and its adjudicatory functions to the Merit Systems Protection Board (MSPB).

## II

When read against its background, the text of the CSRA is readily understood as meaning exactly what it says and no more. Generally, the CSRA merely enacted provisions necessary to achieve the reallocation of CSC functions and codified the protections previously enjoyed by competitive service employees only by virtue of an Executive Order. See n. 3, *supra*. It addresses nonpreference eligible excepted service employees only limitedly, and then only to expand, not to contract, the remedies available to them. Chapter 23 of the Act extends limited protection against prohibited practices (such as retaliatory discharges and discrimination) to nonpreference eligibles in the excepted service, and Chapter 43 extends them certain procedural rights in connection with adverse personnel actions based on poor job performance. In both of these areas, the CSRA grants nonpreference eligible members of the excepted service benefits that they had not previously enjoyed.

Chapters 75 and 77 describe the administrative and judicial procedures that are available to veterans and competitive service employees who are removed for "cause." Since nonpreference eligible members of the excepted service have no job tenure and may be removed without cause, it is perfectly obvious why Congress did not include them within the

and fired more easily, but for the right reasons." S. Rep. No. 95–969, p. 4 (1978).

coverage of these chapters. It did, however, give the OPM the authority to extend the coverage of Chapter 75 to certain employees in the excepted service. See 5 U. S. C. § 7511(c). Again, however, this is a provision which, if exercised, would provide new protections for nonpreference eligible excepted service personnel.

Not a word in the CSRA suggests that Congress intended to repeal the limited pre-existing judicial remedy for nonpreference eligible excepted service employees.[5] The fact that Congress expressly added to the protections for this class of employees, in light of Congress' presumed familiarity with the established remedy that was already available to them,[6] strongly supports the conclusion that Congress did not intend to repeal that remedy. See *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Curran,* 456 U. S. 353, 381–382 (1982). This conclusion is reinforced by the fact that Congress was careful to amend a number of earlier statutes to conform

---

[5] The language used by Congress to grant those employees covered by Chapter 75 and other chapters of the Act judicial review of adverse MSPB decisions is instructive. Employees who are governed by Chapter 75 have an express right to seek administrative review of adverse personnel decisions before the MSPB. Title 5 U. S. C. § 7703(a)(1) provides that "[a]ny employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision." If, as the majority concludes, Congress intended to bar nonveteran excepted service employees from all judicial review of any adverse personnel action falling within the scope of Chapter 75, one would reasonably have expected Congress to draft § 7703 to read "*only* employees or applicants for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of an adverse personnel action." Such language would have made it clear that Congress intended to limit judicial review to those personnel actions falling within the jurisdiction of the MSPB. However, as actually written, § 7703 merely creates jurisdiction. Nothing in its language or construction even hints at the withdrawal of jurisdiction created elsewhere.

[6] See *Rodriguez* v. *United States,* 480 U. S. 522, 525 (1987) *(per curiam)* (Congress is presumed to act with full awareness of existing judicial interpretations).

them with the CSRA,[7] but did not amend the Back Pay Act or the Tucker Act to limit the nature or scope of relief available under their provisions.[8]

Given the comprehensive nature of the CSRA, it is highly improbable that Congress intended to make any significant changes in the law that are not plainly discernible from the language of the statute. This realistic appraisal of the actual intent of the lawmakers who drafted and enacted the CSRA is given added support by the strong presumption favoring judicial review of administrative action. See *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 670–673 (1986).

### III

In my opinion the majority is not faithful to the rule against lightly implying an intent to repeal a previously existing statutory remedy,[9] or to the presumption that agency actions are

---

[7] See Technical and Conforming Amendments, Pub. L. 94–454, §§ 703 and 906, 92 Stat. 1216 and 1224.

[8] Congress' failure to so amend the Back Pay Act is especially notable since the Back Pay Act was amended by the CSRA in other respects. The CSRA amendment to the Back Pay Act ensures that unfair labor practice and grievance proceedings are considered administrative proceedings, specifies the particular items recoverable as backpay by a prevailing employee (pay, allowances, and differentials plus interest, and attorney's fees and costs), and provides procedures for restoring annual leave, but does not purport to limit the class of employees entitled to obtain this relief. See H. R. Rep. No. 95–1403, pp. 60–61 (1978); n. 2, *supra*. The amendment contains no language supporting the majority's conclusion that the words "appropriate authority" in the Act were implicitly amended by the CSRA to exclude courts relying on Tucker Act jurisdiction.

[9] See *Rodriguez* v. *United States*, 480 U. S., at 524 (1987) (repeals by implication are not favored and will not be found unless an intent to repeal is clear and manifest); *Randall* v. *Loftsgaarden*, 478 U. S. 647, 661 (1986) (" '"[I]t is . . . a cardinal principle of statutory construction that repeals by implication are not favored," '" quoting *Radzanower* v. *Touche Ross & Co.*, 426 U. S. 148, 154 (1976), in turn quoting *United States* v. *United Continental Tuna Corp.*, 425 U. S. 164, 168 (1976)); *Ruckelshaus* v. *Monsanto Co.*, 467 U. S. 986, 1017–1018 (1984) ("[R]epeals by implication are disfavored" and "where two statutes are capable of co-existence, it is the duty

subject to judicial review. The majority finds within the CSRA, a statute that generally broadens the rights of federal employees, an intention to eliminate judicial review of the

of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective").

*Monsanto* concerned the constitutionality of certain provisions of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U. S. C. § 136 *et seq.* One of the challenged provisions provided that a party who submitted data to the Environmental Protection Agency as part of the process of registering a product could lose its right to compensation for the public use of those data if it failed to participate in proceedings to reach agreement as to the amount of compensation due or to comply with the terms of such an agreement. See § 136a(c)(1)(D)(ii). Rejecting an allegation that this provision evidenced an intent to repeal the Tucker Act remedy that ordinarily was available for a taking without just compensation, we reiterated that repeals by implication are not favored and reasserted that whenever two statutes were capable of coexistence, it was our duty, "absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Monsanto*, 467 U. S., at 1018. We reached the conclusion that no repeal of Tucker Act jurisdiction was intended even though we had to imply a requirement that remedies under FIFRA be exhausted before Tucker Act relief was sought to reconcile the two statutes. *Ibid.*

The reasoning we applied in *Monsanto* applies with even more force here. The CSRA and the Tucker Act coexist easily. Allowing nonpreference eligible excepted service employees to pursue a remedy under the Tucker Act in no way interferes with the operation of the CSRA. No judicially created exhaustion requirement or other gap-filling measure is necessary to the harmonious operation of the two statutes. See *St. Martin Evangelical Lutheran Church* v. *South Dakota*, 451 U. S. 772, 788 (1981) (the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable).

There is an unacknowledged danger in the majority's failure to accord the presumption against implied repeals the weight it has enjoyed in previous decisions of this Court. The presumption disfavoring implied repeals has been a part of this Court's jurisprudence at least since 1842. See *Wood* v. *United States*, 16 Pet. 342, 362–363 (1842) (repeal to be implied only if there is a "positive repugnancy" between the old law and the new); *Daviess* v. *Fairbairn*, 3 How. 636, 648 (1845) ("Virtual repeals are not favoured by courts"); *United States* v. *Tynen*, 11 Wall. 88, 92 (1871) ("[I]t is a familiar doctrine that repeals by implication are not favored"). It is a

procedural regularity of agency actions that may affect thousands of federal workers.[10]   To support this remarkable conclusion, the majority places primary reliance on our decisions in *Block* v. *Community Nutrition Institute*, 467 U. S. 340, 345–348 (1984), and *United States* v. *Erika, Inc.*, 456 U. S. 201 (1982).   But this reliance extends these cases beyond their intended scope and gives them weight they cannot bear. As the Federal Circuit noted in its decision:

> "In both *Community Nutrition* and *Erika* there was no jurisdiction because the very statute asserted to provide the substantive right relied on was instead interpreted to prohibit judicial review of its own provisions. The Court did not hold in either case that the relevant statute had repealed a substantive right granted in a dif-

firmly entrenched part of the legal landscape against which Congress works.   We can presume with certainty that Congress is aware of this longstanding presumption and that Congress relies on it in drafting legislation.   Necessarily, we must presume that Congress drafted the CSRA in the context of our assurances that the Act's language would not lightly be found to repeal existing statutes.   Changing the weight to be accorded this presumption alters the legal landscape.   If we construe a statute in a different legal environment than that in which Congress operated when it drafted and enacted the statute, we significantly increase the risk that we will reach an erroneous interpretation.   This danger further enhances the need for us to be faithful to our duty to read statutes consistently whenever possible and to find repeals by implication only when differences between earlier and later enactments are irreconcilable.

[10] It is remarkable that the majority finds this intention sufficiently well expressed in congressional silence to overcome a presumption that can be rebutted only by "clear and convincing evidence" that Congress intended to deny judicial review.   *Abbott Laboratories* v. *Gardner*, 387 U. S. 136, 141 (1967).   To meet this standard, congressional intent must be fairly discernible in the statutory scheme.   *Block* v. *Community Nutrition Institute*, 467 U. S. 340, 351 (1984).   Even when "substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling."   *Ibid.*   There simply does not exist in the legislative history or text of the CSRA clear and convincing evidence that Congress intended despite its silence to effect a repeal of Tucker Act jurisdiction.

ferent statute. It is essential to a proper understanding of this case to recognize that the issue is *not* whether the CSRA *authorizes* judicial review for persons in the excepted service. The issue is *not* whether persons in the excepted service are entitled to the protection afforded other federal workers by the CSRA. The issue is *not* whether the CSRA grants persons in the excepted service some kind of private right of action. Fausto makes no claim of entitlement under the CSRA and we do not resolve that issue in this case. The issue in this case is whether one act of Congress, the CSRA, has silently repealed other acts of Congress, the Tucker Act and the Back Pay Act. The government asserts that it has. But its arguments, though appearing persuasive, are superficial and fail to directly address the issue. The thrust of its arguments, of its authority in the Supreme Court and in this circuit and in the other circuits, is that persons in the excepted service have no cause of action under the provisions of the CSRA and in that sense the CSRA does not authorize suit; that is to say, the government explains, the CSRA 'precludes' judicial review and therefore, the government concludes, the CSRA bars judicial review under any basis in any forum.

"Again, that is *not* the situation here. Whether the CSRA provides a basis for a cause of action for, or whether the CSRA instead precludes judicial review of, issues which the CSRA does cover is not at all the issue here. Neither *Community Nutrition* nor *Erika* supports the proposition that omission of any mention of an issue in one statute operates to repeal the grant of judicial review of that issue contained in a different statute." 791 F. 2d 1554, 1557–1558 (1986).[11]

---

[11] The Federal Circuit concluded on initial review and after rehearing that prior to the passage of the CSRA a nonpreference eligible employee had a cause of action under the Tucker Act and the Back Pay Act if he or she was discharged in violation of applicable agency regulations and that

The majority also draws assurance as to Congress' intent from the "structure of the statutory scheme," but this likewise lends no support to the majority's conclusions. Not surprisingly, the CSRA generally provides for review of an adverse personnel action by the Merit Systems Protection Board only when such review is necessary to protect the system of hiring and promoting federal employees on the basis of merit.[12] By definition, see *ante*, at 441, n. 1, employees in the excepted service are not part of the system of merit-based hirings and promotions.[13] Thus, their general exclusion from the protection of the MSPB is quite understand-

Congress did not destroy this cause of action when it enacted the CSRA. 791 F. 2d 1554 (1986); 783 F. 2d 1020 (1986). Because of the unique character of the Federal Circuit, its conclusions are entitled to special deference by this Court.

The United States Court of Appeals for the Federal Circuit was created by the Federal Courts Improvement Act of 1982, Pub. L. 97–164, § 101, 96 Stat. 25. It is the only Federal Court of Appeals whose jurisdiction is "defined in terms of subject matter rather than geography." S. Rep. No. 97–275, p. 3 (1981). Because its jurisdiction is confined to a defined range of subjects, the Federal Circuit brings to the cases before it an unusual expertise that should not lightly be disregarded.

The Federal Circuit is the only Court of Appeals with jurisdiction to review cases on appeal from the Merit Systems Protection Board and the United States Claims Court. In consequence, all claims by federal employees brought under the CSRA or the Tucker Act/Back Pay Act will ultimately be subject to review by the Federal Circuit. The Federal Circuit's exclusive jurisdiction in this area renders it uniquely qualified to determine whether the CSRA implicitly works a partial repeal of Tucker Act/Back Pay Act jurisdiction.

[12] "The Merit Systems Protection Board, along with its Special Counsel, is made responsible for safeguarding the effective operation of the merit principles in practice." S. Rep. No. 95–969, at 6.

[13] Throughout the CSRA, preference eligible excepted service employees, that is, veterans and some close relatives of veterans, are given for policy reasons the same protections as members of the competitive service. See H. R. Rep. No. 95–1403, at 8 ("[V]eterans' preference laws [are] a benefit which the Government bestowed and should continue to bestow on its citizens who have served in the armed services during a period of war or armed conflict").

able.  Since the availability of judicial review under the Act is tied to initial review by the MSPB, 5 U. S. C. § 7703(a)(1), the CSRA does not provide any means by which a nonpreference eligible excepted service employee may seek judicial review.  Thus, the failure to provide an avenue of judicial review for nonpreference eligible excepted service employees within the CSRA is not a *preclusion* of such review in all contexts, rather it is merely the consequence of the fact that actions against persons who are not in the competitive service do not pose a threat to the merit protection system.  The converse is also true; permitting nonpreference eligible excepted service employees to seek review of adverse agency decisions under the Tucker Act poses no harm to the merit protection system.

The majority argues that allowing nonpreference eligible excepted service employees to obtain judicial review under the Tucker Act would turn "upside down" and "seriously undermine" structural elements of the CSRA.  *Ante,* at 449. The majority creates from thin air the notion that the CSRA was designed to create a primacy of competitive service employees and preference eligible excepted service employees over nonpreference eligible excepted service employees.  As explained above, nonpreference eligible excepted service employees receive limited treatment in the CSRA not because Congress saw them as less worthy than other federal employees, but because actions affecting them could have little effect on the merit protection system the CSRA was designed to protect.  The majority simply overlooks the narrow scope of the remedy available under the Tucker Act.  It bears repeating that nonpreference eligible excepted service employees do not have, and have never had, a generalized right to challenge their removals under the Tucker Act.  *Batchelor* v. *United States,* 169 Ct. Cl., at 183; *Greenway* v. *United States,* 163 Ct. Cl., at 75.  Tucker Act jurisdiction was and remains limited to those instances when the agency violates its own regulations in discharging an employee.  Making a

remedy this narrowly drawn available to employees not covered by the MSPB poses no threat to the structural integrity of the MSPB.

The majority claims that permitting nonpreference eligibles to pursue this remedy would give such employees an advantage over preference eligibles and competitive service employees. Quite the contrary. To proceed under the Tucker Act, a nonpreference eligible excepted service employee must be prepared to develop the facts relevant to his or her claim at a formal trial. An employee who is entitled to seek relief before the MSPB will have the opportunity to proceed in a far less formal atmosphere, without paying filing fees and other costs. Because the proceedings are less formal, the employee may be able to present his or her case competently without the assistance of an attorney. Also, the CSRA requires that review by the MSPB be provided expeditiously, 5 U. S. C. § 7701(i)(1); an employee entitled to proceed before the Board may therefore anticipate obtaining relief in a much shorter period of time than an employee who must file a complaint with the Claims Court. The difference in the burdens of proof in the two schemes also favors the employee with a right to seek MSPB review. An employee who brings a Tucker Act claim must prove by a preponderance of the evidence that the agency violated its own regulations. In proceedings before the MSPB, however, the agency has the burden of proving that its actions are supported by a preponderance of the evidence, 5 U. S. C. § 7701(c)(1)(B), and in some instances by substantial evidence, § 7701(c)(1)(A). Most importantly, an employee entitled to seek relief before the MSPB may obtain judicial review of the *merits* of an adverse personnel action, while a nonpreference eligible excepted service employee proceeding under the Tucker Act is entitled to judicial review only of whether the agency violated its own regulations. Given the advantages that attend review by the MSPB, it is clear that pursuit of a Tucker Act claim is not the more favored route.

Contrary to the majority's view, holding that a Tucker Act remedy survived the enactment of the CSRA would not impair the congressional goal of "[e]ncourag[ing] more consistent judicial decisions on review." The majority reads into the desire to "encourage" uniformity a command to guarantee it. However, the precatory words Congress chose describe only a desire to encourage or promote uniformity, nothing more. As originally enacted, § 205 of the CSRA achieved this congressional goal by eliminating review by United States district courts, not by limiting the number of courts of appeals that had jurisdiction to review appeals from the MSPB.[14] In 1982 Congress amended § 205 to limit review of MSPB decisions to the United States Court of Appeals for the Federal Circuit. 5 U. S. C. § 7703(b)(1). Any goal Congress sought to achieve in making this change is not frustrated by continuing to recognize jurisdiction under the Tucker Act since Tucker Act suits are also appealable only to the Federal Circuit. See n. 11, *supra*.

In essence, the majority relies on the bare fact that Congress provided for review of some adverse personnel actions through the MSPB to infer a congressional desire to preclude judicial review of other actions. But congressional silence surely does not provide the clear and convincing evidence of intent we have previously demanded before finding that an existing statutory remedy has been repealed. I respectfully dissent.

---

[14] Section 205 of the CSRA, Pub. L. 95-454, 92 Stat. 1143, originally provided:

"Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals as provided in chapters 91 and 158, respectively, of title 28."

Thus appeals from the MSPB could be heard by the Court of Claims pursuant to the Tucker Act, 28 U. S. C. § 1491, or by any court of appeals pursuant to 28 U. S. C. §§ 2342 and 2344. The original form of § 205 demonstrates that Congress did not intend to achieve uniformity at the expense of limiting the scope of Tucker Act jurisdiction.