NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**STUART NICHOLS AULD,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2023-1764

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00429-RTH, Judge Ryan T. Holte.

---

Decided:  August 12, 2024

---

STUART NICHOLS AULD, Kansas City, MO, pro se.

JANA MOSES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

PER CURIAM.[1]

Stuart Nichols Auld appeals the final decision of the United States Court of Federal Claims ("CFC") granting the Government's motion for summary judgment on Count I of his complaint and dismissing Count II of his complaint for lack of jurisdiction. *Auld v. United States*, 2023 WL 2052343, at \*1 (Fed. Cl. Feb. 16, 2023). We *affirm*.

## BACKGROUND

Mr. Auld worked in a temporary capacity for the Department of Commerce from October 1998 until October 2000 before becoming, in June 2009, a realty specialist for the Bureau of Land Management ("BLM") in the Department of the Interior in a position that was conditioned on completing a one-year probationary period. Am. Compl. at 2−3, ECF No. 28. When Mr. Auld applied to the realty specialist position, he "stated he was not a current Federal employee." *Auld*, 2023 WL 2052343, at \*1 (citing Mot. for Summ. J. and Mot. to Dismiss at 2, ECF No. 35).

On May 5, 2009, Mr. Auld signed an "Employment Agreement" wherein the Government agreed to reimburse him for "the cost of travel, transportation, and other allowable expenses including transportation and storage of household goods and personal effects" for his "transfer for duty" from Kansas to Colorado for his BLM position. *Id.* The agreement stated that reimbursement would be "in accordance with the Administrative Expenses Act of 1946 [("the Act")], as amended, and under Public Law 89-516 . . . and regulations issued by the General Services Administration." *Id.* (citing Compl., Ex. C, ECF No. 1−1; Am. Compl. at 3).

The Employment Agreement also specifically provided that Mr. Auld "agree[s] to remain in the Federal Government service for twelve (12) months following the effective

---

[1]    Circuit Judge Newman did not participate.

date of transfer" such that if Mr. Auld "fail[ed] to complete the above agreement, any moneys expended by the Federal Government because of such travel, transportation, and other allowable expenses shall be recovered from [Mr. Auld] as debt due the United States, unless [Mr. Auld] may become separated from the Government for reasons beyond [Mr. Auld's] control." *Id.* (citing Compl., Ex. C; Am. Compl. at 4).

To cover Mr. Auld's employment-related travel expenses per the Employment Agreement, the Government provided him with a credit card and gave him "oral instructions of how to handle personal or individual charges." *Id.* at *2. The Government, before the completion of Mr. Auld's one-year probationary period, terminated his employment for "performance and conduct-related matters," including violations of the credit card policy and "fail[ure] to follow his supervisor's instructions on multiple occasions." *Id.* (citing July 16, 2020 Order at 2, ECF No. 98). The Government deducted the relocation expenses that it alleged Mr. Auld owed back from his final paycheck after termination. *Id.*

Mr. Auld's initial complaint in the CFC was amended on April 25, 2016. *Id.* Mr. Auld's amended complaint recited two counts: "(1) 'The BLM breached its employment agreement with Mr. Auld'; and (2) 'BLM's actions were arbitrary and capricious.'" *Id.* (quoting Am. Compl. at 8–10). For relief on the first count, Mr. Auld sought recovery of the amount deducted from his final paycheck. For relief on the second count, Mr. Auld sought restoration to his former realty specialist position. Suppl. App. 159. The Government filed a joint motion for summary judgment on Count I and motion to dismiss on Count II on July 13, 2016. *Auld*, 2023 WL 2052343, at *2 (citing Mot. for Summ. J. and Mot. to Dismiss). On July 29, 2019, Mr. Auld's case was reassigned from Judge Victor J. Wolski to Judge Ryan T. Holte. *Id.* (citing Order Reassigning Case, ECF No. 78).

The CFC then denied as futile or stayed multiple subsequent motions from Mr. Auld pending the resolution of the Government's motion for summary judgment and to dismiss. *Id.* at *2−3.

The CFC resolved the Government's motion for summary judgment on Count I and to dismiss Count II of Mr. Auld's complaint on February 16, 2023, granting the Government's motion on both counts. *Id.* at *10.

The CFC first considered the Government's motion for summary judgment on Count I—Mr. Auld's allegation that the government breached the Employment Agreement—and found that the Employment Agreement, when read in conjunction with the incorporated Act, was "a valid contract for moving expenses subject to [Mr. Auld's] one year of service." *Id.* at *6−8. The CFC noted that the Employment Agreement "directly incorporates and references the language of § 5724(i)" of the Act, which covers reimbursements for transferring employees, and § 5723, for moving expenses for new employees, which has language that is "virtually identical to § 5724(i)."[2] *Id.* at *7.

---

[2]    The pertinent language in the Employment Agreement, with the language that is substantially similar to that in the Act emphasized, is as follows:

I agree to *remain in the Federal Government service for twelve (12) months following the effective date of transfer*, with the understanding that the cost of travel, transportation, and other allowable expenses including transportation and storage of household goods and personal effects will be paid by the Government.

Reimbursement will be in accordance with the Administrative Expenses Act of 1946, as amended, and under Public Law 89–516, approved July 21, 1966, and

Evaluating the plain meaning of the Employment Agreement and the Act, the CFC found that both "expressly provide [Mr. Auld] must complete a twelve-month probationary period" for reimbursement and that, therefore, "eleven months" of work "does not suffice." *Id.* at *8. The CFC addressed the language excepting the twelve-month requirement where an employee "become[s] separated from the Government for reasons beyond [the employee's] control and acceptable to the Bureau or Office concerned" and found that the conduct-related matters and the misuse of the government credit card that were the bases of Mr. Auld's termination were within his control. *Id.* Thus, the CFC found that there was no genuine dispute as to any material fact supporting the conclusion that the Government was entitled to summary judgment to recover the travel funds it advanced to Mr. Auld. *Id.*

The CFC then turned to the question of whether it should dismiss Count II of Mr. Auld's complaint for a lack of jurisdiction since his challenge related to BLM's personnel decision to terminate his employment. *Id.* at *8. The CFC explained that under the Civil Service Reform Act of 1978 ("CSRA") and the Supreme Court's decision in *United States v. Fausto*, the Merit Systems Protection Board ("MSPB") has exclusive jurisdiction to review an agency's

---

regulations issued by the General Services Administration.

In the event I fail to complete the above agreement, any moneys expended by the Federal Government because of such travel, transportation, and other allowable expenses shall be recovered from me as a debt due to the United States, unless I may become *separated from the Government for reasons beyond my control and acceptable to the Bureau or Office concerned*.

*Id.* at *6–7.

personnel decision, and that "the CSRA does not extend administrative or judicial review to non-preference members, such as probationary employees." *Id.* at *9 (citing 484 U.S. 439, 443, 454 (1988)). The CFC then reasoned that, since Mr. Auld signed a termination letter confirming that he "'was a probationary employee with no statutory right to appeal his termination' except to the MSPB if [he] suspects 'his termination was the result of political reasons or due to his marital status,'" the CFC did not have jurisdiction over his claim. *Id.* (citing Mot. for Summ. J. and Mot. to Dismiss). Mr. Auld timely appealed the CFC decision to this Court.

## DISCUSSION

This Court reviews the CFC's summary judgment decision *de novo*, applying the same standard as the CFC: summary judgment should be granted when "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Aviation & Gen. Ins. Co. v. United States*, 882 F.3d 1088, 1093 (Fed. Cir. 2018); RCFC 56(a).

This Court reviews the CFC's dismissal of a claim for lack of jurisdiction *de novo* and reviews jurisdictional findings of fact for clear error. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1353−54 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008).

This Court possesses jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

We affirm the CFC's grant of summary judgment on Count I of Mr. Auld's complaint because the undisputed facts support the finding that the Government did not breach the Employment Agreement. The express terms of the Employment Agreement and incorporated Act make clear that the Government's agreement to reimburse Mr. Auld for relocation expenses was contingent on him "remain[ing] in the Federal Government service for twelve (12) months following the effective date of transfer." Suppl. App. 48 (Employment Agreement); 5 U.S.C. §§ 5724(i),

5723(b). Mr. Auld does not contest the fact that he served less than a year with BLM. Am. Compl. at 1 (averring that Mr. Auld was employed by BLM from June 8, 2009, until April 30, 2010). Additionally, Mr. Auld provided his signature to acknowledge receipt of his termination letter that explained that he had been terminated "during [his] probationary period." Suppl. App. 145; *Auld*, 2023 WL 2052343, at *4. Further, Mr. Auld's own contentions under Count II in his complaint refer to his status as a probationary employee. *See, e.g.*, Am. Compl. at 9 ("BLM did not utilize the probationary period to evaluate Mr. Auld's fitness for government service when it terminated Mr. Auld for violating a credit card policy."). Thus, there is no dispute of material fact that Mr. Auld failed to serve the twelve-month probationary period required by the Employment Agreement to entitle him to relocation expenses, and summary judgment in favor of the Government on Count I was proper.

We also affirm the CFC's dismissal of Count II of Mr. Auld's complaint because his contention that BLM's actions were arbitrary and capricious relate only to BLM's personnel decision evaluating his candidacy for employment, which falls under the exclusive jurisdiction of the MSPB. *See Fausto*, 484 U.S. at 454 ("[W]e find that under the comprehensive and integrated review scheme of the CSRA, the [CFC] (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination."). *See also Read v. United States*, 254 F.3d 1064, 1066 (Fed. Cir. 2001) ("[O]nly the [MSPB], not the [CFC], is authorized to review removals of federal employees."); 5 U.S.C. § 1204. Thus, Mr. Auld failed to establish the CFC's subject matter jurisdiction and the CFC properly dismissed Count II.

**AFFIRMED**

COSTS

No costs.