**John G. DARDIS, Plaintiff,**

v.

**George P. SHULTZ, Defendant.**

**Civ. A. No. 86–690.**

United States District Court,
District of Columbia.

June 15, 1988.

Edward H. Passman, Passman & Broida, Washington, D.C., for plaintiff.

Diane M. Sullivan, Asst. U.S. Atty., Washington, D.C., and on brief, Royce C. Lamberth, then Asst. U.S. Atty., and Joseph E. DiGenova, then U.S. Atty., for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

In 1976, plaintiff entered the Foreign Service as a Foreign Service Reserve Officer with a limited appointment. Plaintiff successfully fought the State Department's attempts to terminate that appointment and to deny him tenure; in 1980 the Foreign Service Grievance Board ruled that he be given an opportunity to achieve career status and in 1983 the Board directed the Department to convert plaintiff to Foreign Service Reserve Unlimited ("FSRU") status retroactive to October 21, 1980, with appropriate back pay and benefits. *See Record Before the Foreign Service Grievance Board* ("Record"), number 26, at 3. At the time of the events at issue in this suit, plaintiff was classified as FSRU–2/7.

Under the Foreign Service Act of 1980, certain Foreign Service Officers, including plaintiff, were involuntarily converted first to the Senior Foreign Service and then to a position listed on the General Schedule ("G.S.") system. 22 U.S.C. § 4154. Accordingly, plaintiff was converted to level ES–4 within the Senior Foreign Service and eventually to GS Level 16/step 5. In 1984, plaintiff filed a grievance challenging the level within the Senior Foreign Service, and the subsequent "GS" classification, to which he had been converted. In April, 1986, the Foreign Service Grievance Board decided that the conversion and new grade and step were proper, and it denied plaintiff's grievance. Plaintiff thereupon filed this case.

Now before the Court are plaintiff's motion for summary judgment and defendant's motion to affirm the decision of the

Foreign Service Grievance Board. The Court has had the benefit of oral argument in this case, and it has examined the record, the legal memoranda, and the underlying law. The Court has concluded that the decision of the Foreign Service Grievance Board is supported by substantial evidence and was proper. Accordingly, the Court will grant defendant's motion to affirm the Grievance Board's decision and will deny plaintiff's motion for summary judgment.

## THE COURT HAS JURISDICTION OVER THIS CASE.

■ The Foreign Service Act of 1980 specifies that:

> Any aggrieved party may obtain judicial review of a final action of the ... [Foreign Service Grievance] Board on any grievance in the district courts of the United States in accordance with the standards set forth in chapter 7 of Title 5.

22 U.S.C. § 4140. This provision obviously covers Grievance Board actions with respect to pay. As such, it seems to conflict with the Tucker Act, 28 U.S.C. § 1491, which appears to mandate that plaintiffs who seek more than $10,000 in back pay from the government proceed in the United States Claims Court and not the district courts of the United States.

At oral argument, plaintiff stated that he was seeking at least $10,659.20 in back pay. As a result, the Court questioned its jurisdiction over this suit. Although the parties agreed that the case was properly brought in this Court, the Court indicated that it would have to reexamine the issue of subject matter jurisdiction *sua sponte.* Having done so, the Court is satisfied that it indeed has jurisdiction.

The Tucker Act was last amended by the Federal Courts Improvement Act of 1982. 96 Stat. 25 (Apr. 2, 1982). As the Courts Improvement Act became law after the enactment of the Foreign Service Act of 1980, the apparent conflict between the jurisdictional provisions of the two laws suggests the possibility that the later Act directly or indirectly amended or repealed the earlier jurisdictional language. From the language and legislative history of the two laws, however, it is clear that no such amendment or repeal may properly be inferred.

The law "strongly presume[s] ... that Congress will specifically address [express] language on the statute books it wishes to change." *United States v. Fausto,* —— U.S. ——, 108 S.Ct. 668, 676, 98 L.Ed.2d 830 (1988); *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). Neither the text of the Tucker Act nor the language of the Federal Courts Improvement Act "specifically addresses" the question of jurisdiction over Foreign Service grievances; nor do the legislative history and statutory design of the Courts Improvement Act suggest that Congress ever considered whether that Act affected specific jurisdictional grants in other statutes. Thus, the Court would have to find that the Foreign Service Act's language (*i.e.,* 22 U.S.C. § 4140) was repealed by implication of the Courts Improvement Act if it were to find that it lacks jurisdiction over Foreign Service grievances.

It is hornbook law that "repeals by implication are strongly disfavored, ... so that a later statement will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two." *United States v. Fausto,* 108 S.Ct. at 676. There is no such "clear repugnancy" between the Foreign Service Act's grant of jurisdiction over grievance actions and the Federal Courts Improvement Act's general grant of jurisdiction to the Claims Court. Rather, the Foreign Service Act's jurisdictional language can easily be read as a specific exception to the general rule vesting exclusive jurisdiction over federal back pay claims in the Claims Court.

Moreover, this is the most logical reading of the Foreign Service Act. The Tucker Act existed in not too dissimilar form prior to enactment of both the Foreign Service Act of 1980 and the Federal Courts Improvement Act of 1982. Congress could have granted jurisdiction over Foreign Service pay issues in the old Court of Claims under the Tucker Act as it existed in 1980. Congress instead gave jurisdiction over

these issues to the United States District Courts. It would thwart congressional intent to imply into the Federal Courts Improvement Act a repeal of an explicit legislative choice to vest jurisdiction in this Court. The Court will not read the Courts Improvement Act to demand so unlikely a result.

Accordingly, the Court cannot find that the Courts Improvement Act explicitly or implicitly repealed or amended the jurisdictional provisions of the Foreign Service Act. As such, the Court is satisfied that it has jurisdiction over this case.

THE COURT MUST FIND THAT THE DECISION OF THE FOREIGN SERVICE GRIEVANCE BOARD WAS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD.

■ The Foreign Service Act of 1980, 22 U.S.C. § 3901 *et seq.*, was designed to strengthen and improve the Foreign Service by consolidating and reorganizing the branches of the then-existing Foreign Service. *See* 22 U.S.C. § 3901. The Act revamped, among other things, the classification and pay systems that were established by the Foreign Service Act of 1946, as amended. *See* 22 U.S.C. §§ 867, 869 (1979).

Under the 1980 Act, foreign service officers who had been given appointments at Class 2 or higher under the schedule established by the 1946 Act would be converted to a different classification system. Those officers who were available for worldwide duty would be converted to the new Senior Foreign Service and paid according to the Senior Executive Service ("ES") schedule; foreign service officers who were not able to serve worldwide would be converted to the "General Schedule" ("G.S.") system after a three-year transition period as part of the Senior Foreign Service. *See* 22 U.S.C. §§ 4152–4154.

On February 21, 1981, the President issued Executive Order 12,293, which divided the Senior Foreign Service into three classes: Career Minister, Minister–Counselor, and Counselor. Executive Order 12,293 also set pay rates for members of the Senior Foreign Service; Counselors could be slotted at a pay rate between ES–1 and ES–6, Minister–Counselors could be paid at a rate from ES–4 to ES–6, and Career Ministers were to be paid at the ES–6 rate. E.O. 12,293; *cf.* 5 U.S.C. § 5332 (salary rates for ES levels).

Plaintiff was not available for worldwide service and therefore fell into the category of foreign service officers who would eventually be converted to the "G.S." scale. *See, e.g., Record 26, at 3.* Defendant identified plaintiff's former rank, FSRU–2, as corresponding to the Counselor class, and plaintiff does not dispute this. Rather, the dispute between the parties centers on the classification and pay category to which plaintiff was assigned.

Before plaintiff was affected by the 1980 Act, he was classified an FSRU–2/pay step 7. *Id.* As such, he had a "scheduled salary" of $62,241 per year, although, like other highly paid government officials, he was subject to a cap limiting his pay to $50,112 per year. *Id.* During the three-year transition period, plaintiff was converted to Executive Salary Level 4 ("ES–4") and, after that transition, he was converted to the GS–16, step 5 level. *Id.*

Plaintiff maintains that he should have been converted to Executive Salary Level 6 ("ES–6"), rather than ES–4. He claims that the Foreign Service Act mandates that he suffer no reduction in salary as a result of the conversion, and he argues that he suffered a reduction when he was converted from an FSRU–2/7 job that paid $62,241 to an ES–4 level position, which has a salary of $57,673. *Record 02.1.5.* The Foreign Service Grievance Board rejected plaintiff's claim, and it was right to do so.

The statutory section upon which plaintiff relies states:

> Every individual who is converted under this subchapter shall be converted to the class or grade and pay rate that most closely corresponds to the class or grade and step at which the individual was serving immediately before conversion. No conversion under this subchapter shall cause any individual to incur a reduction in his or her class, grade, or basic rate of salary.

22 U.S.C. § 4156(a)(1). This section applies only to salaries during the transition period. *See* Foreign Service Act, subchapter XII.

The most important fact in this case is that defendant ensured that plaintiff did not experience any reduction in his "basic rate of salary" when he was converted to the new system. Plaintiff admits that, although the nominal salary set for his classification was lower than his pre-conversion salary, *he was entitled to a "protected rate of pay" set at the level of his old salary. Record 26, at 5.* Had the statutory cap been lifted, and plaintiff been eligible to receive his full salary, this "protected rate" ensured that plaintiff would have received at least his former salary for the entire transition period. Thus, during that period, he would not have incurred any reduction in his "basic rate of salary."[1] This would seem wholly in accord with the language of § 4156.

Plaintiff does not directly refute this point. Rather, he argues that the statute mandates that defendants classify him at the class and grade whose nominal salary rate equals or exceeds his former salary: specifically, ES–6. The statute does no such thing.

First, the statute specifies that foreign service officers be converted to the "class or grade and pay rate *that most closely corresponds*" to each officer's pre-conversion class or grade and pay rate. The Secretary of State is responsible for interpreting and implementing the statute, and he has discretion to decide what new classification "most closely corresponds" to the pre-conversion classification. E.O. 12,293, § 5 (Feb. 21, 1981). From the clear language of the statute, that "correspondence" encompasses more than pay; the class or grade of job, and the associated responsibilities, must also correspond. *See* 22 U.S.C. § 3981; E.O. 12,293, § 5.

On the basis of the administrative record, it appears that the Secretary of State dis-tributed Foreign Service Officers among grades and classes that approximately correspond to the pre-conversion system and distribution of grades and classes. *See Record 26, at 13.* This relative positioning of Foreign Service Officers clearly fell within the Secretary's discretion. *See* 22 U.S.C. § 3981; E.O. 12,293, § 5. The Secretary was authorized to assign Foreign Service Officers to the "most closely corresponding" class or grade, as long as the individual officer experienced no diminution in basic rate of pay. Neither statute nor logic prohibited the Secretary from distributing foreign service officers among a hierarchy of Senior Foreign Service or Civil Service ranks while ensuring that each officer continued to receive at least his or her former "basic rate of salary" regardless of the nominal pay rate associated with that class or rank.

Plaintiff reads the statute to prohibit this and to mandate that he be placed in a position with a nominal salary equal to or greater than his old one. The flaw in plaintiff's reasoning is readily apparent:

> Using the current Government-wide pay schedules as an illustration, a GS–18 has a *scheduled rate* of $84,157 ... If this position were to be converted out of the General Schedule to another position in the Department of State, the closest *payable rate* would be $86,200, the payable salary for the Secretary of State.

*Record 21, at 2.* Surely not even plaintiff would argue that the duties of a GS–18 approach those of the Secretary of State; nor could plaintiff argue that a GS–18 who was converted to a non-General Schedule position should be "slotted" in the same class or group as the Secretary of State.

To be sure, this argument is not precisely on point, as plaintiff does not enjoy a GS–18 rank. But the analogy is telling: defendant was justified to take care that an existing hierarchy of duties and rank was respected when he implemented the conver-

---

**1.** The fact that this salary was subject to a government-wide pay cap does not suggest that plaintiff's "basic rate of salary" was diminished under the new scheme. Plaintiff's "basic rate of salary" is the salary he would have received *but* for the pay cap, *American Foreign Service Association v. Haig,* No. 81–1418 (D.D.C. Dec. 4, 1981), and the creation of a "protected salary rate" ensured that plaintiff would have received his former salary if the pay cap were lifted.

sion from one classification and salary system to another. Had the Secretary acted otherwise, the vast majority of experienced foreign service officers would have been slotted into one "class," without regard to their different job responsibilities and their differing levels of experience and skill. The Secretary had discretion to avoid this unwieldy compaction of the Foreign Service, and there is more than substantial evidence that he exercised this discretion properly. *See* 22 U.S.C. § 3981; E.O. 12,-293, § 5; *Record* at Parts I–III.

The legislative history of the Foreign Service Act buttresses the idea that the Secretary had full discretion to replicate a hierarchy of Foreign Service Officers similar to the classification scheme under which the Foreign Service operated prior to the 1980 Act. According to the House Report that accompanied the bill, Foreign Service Officers who were not available for worldwide assignment were to be converted to "a position in a comparable grade" of the General Schedule or Senior Executive Service; in addition, the conversion was to be "accomplished in a manner which preserves the status and benefits that members of the Service enjoyed prior to conversion." *Foreign Service Act of 1980*, H.Rep. 992, part 2, 96th Cong., 2d Sess. 112, U.S.Code Cong. & Admin.News 1980, pp. 4543, 4546.

This language implies that Congress intended the Secretary of State to use his discretion to decide what grade was "comparable" to an Officer's prior grade and to convert each Officer to that comparable grade as long as the conversion did not result in a "reduction in the [officer's] basic rate of pay." The Secretary's actions were fully consistent with this intent, and it is this very consistency that plaintiff attacks.

Plaintiff's final argument is that defendants were compelled to place him at a higher class and pay rate by the Court's decision in *American Foreign Service Association v. Haig*, No. 81–1418 (D.D.C.1981) (unpublished opinion). In that case, Judge Corcoran held that the State Department had violated the Foreign Service Act by setting the post-conversion salary rates on the basis of temporary pay caps rather than the nominal salary rate. The State Department did not make a similar error here; in plaintiff's case, the government *respected* plaintiff's nominal salary rate by ensuring that he would receive his nominal rate of pay whenever the temporary pay cap was lifted.

Thus, the statute, legislative history, and case law support the decision reached by the Foreign Service Grievance Board. The Court must therefore find that the Board's decision was supported by substantial evidence, and it will affirm that decision. Consequently, the Court must deny plaintiff's motion for summary judgment.

## CONCLUSION

It is clear to the Court that defendant had discretion to opt for a conversion system similar to the one urged by plaintiff, and it is also clear to the Court that defendant had discretion to act as he did. By choosing to replicate the old hierarchy of Foreign Service Officers under the new classification scheme established pursuant to the Foreign Service Act of 1980, the Secretary of State's actions were fully consistent with law. Plaintiff was reclassified at a level defendant deemed appropriate and, thanks to his protected rate of salary, he experienced no reduction in his "basic rate of pay." This meets the commands of the Foreign Service Act of 1980.

Accordingly, the Court finds that the decision of the Foreign Service Grievance Board is supported by substantial evidence, and it must therefore affirm the Board's decision and deny plaintiff's motion for summary judgment. The Court will enter an Order, of even date herewith, memorializing these findings.

## ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, and for the reasons set forth therein, it is this 14th day of June, 1988,

ORDERED that defendant's motion for affirmance of the decision of the Foreign Service Grievance Board shall be, and hereby is, granted; and it is

FURTHER ORDERED that plaintiff's motion for summary judgment shall be, and hereby is, denied; and it is

FURTHER ORDERED that this case shall stand dismissed from the dockets of this Court.