Joseph STEPPE, et al., Plaintiffs,

v.

GOVERNOR, UNITED STATES SOLDIERS' AND AIRMEN'S HOME, Defendant.

Civ. A. Nos. 86–1607, 86–3018, 87–1230, 87–1948 and 87–2142.

United States District Court, District of Columbia.

April 10, 1989.

Warren C. White, Adelphi, for plaintiffs.

Jeffrey Hunter Moon, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Plaintiffs brought this action under 28 U.S.C. § 1331 and § 1346(a) and (b), alleging that defendant Governor of the Soldiers' and Airmen's Home ("Home") wrongfully discharged the plaintiffs from their position as employees of the Home. At oral argument plaintiffs indicated they were relying on the Administrative Proce-

dure Act ("APA") as an additional basis for conferring jurisdiction on this court. The APA provides judicial review to "any person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.[1]

It is well established that where Congress intends to preclude judicial review of constitutional claims, including those involving the employment rights of government employees, its intent to do so must be clear. *Webster v. Doe,* —— U.S. ——, ——, 108 S.Ct. 2047, 2050, 100 L.Ed.2d 632 (1988) (citing *Johnson v. Robinson,* 415 U.S. 361, 367, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974)). In *Webster,* the Supreme Court held that the National Security Act, which gives the Director of the CIA wide discretion in deciding whether to terminate a CIA employee, does not preclude the review of related constitutional claims under the APA. *Id.*

The plaintiffs are former employees of the United States Soldiers' and Airmen's Home ("Home") who were discharged in early 1986 for alleged illegal drug activity. Plaintiffs contend that their dismissal was in violation of their constitutional rights under the Fifth Amendment and the collective bargaining agreement between the Home and the Federal Employees and Transportation Workers, Local Union 960 ("Union").

Plaintiffs' complaint is multifaceted. In essence, their allegations are geared to two principal causes of action. First, plaintiffs claim they were deprived of property interests without due process of law when they were discharged from long standing positions at the Home without having the right

---

1. Section 706 outlines the scope of judicial review under the APA. That section states that

 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

 (1) compel agency action unlawfully withheld or unreasonably delayed; and

 (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

 (B) contrary to constitutional right, power, privilege, or immunity;

 (D) without observance of procedure required by law; [or]

 (F) unwarranted by the facts to the extent that the facts are subject to a trial de novo by the reviewing court.

to a hearing where they would be able to exercise their constitutionally mandated right to confront the witnesses against them. Second, in an amended complaint, plaintiffs allege that defendant failed to honor and implement plaintiffs' hearing rights under a negotiated agreement with plaintiffs collective bargaining agent and the Home.

Defendant contends that as excepted service non-preference employees, plaintiffs were not entitled to a hearing by the Home, but to only rights given to them under the collective bargaining agreement. The defendant further contends that the right to arbitration provided for under the agreement lapsed when the Union did not request arbitration in a timely manner.

While plaintiffs seek various kinds of relief including reinstatement and money damages, I believe that this court has the authority only to order a substantive hearing on the serious but unproven charges defendant made against the plaintiffs. Such a hearing under the facts of this case is mandated by the Constitution, the Administrative Procedure Act, and the collective bargaining agreement between the Home and the Union.

█ As is all too often the case in these situations, the government claims that this court is without jurisdiction to consider any of plaintiffs' claims. Since plaintiffs are considered excepted service non-preference employees, the government contends that plaintiffs have no federally protected employment rights. This court does not agree with defendant's contention that these plaintiffs, as excepted service non-preference employees, are in effect "at will" employees of the government. While plaintiffs were all employed in low paying, low level support positions, they held those positions for many years. Indeed, all but one of the plaintiffs held their positions for at least ten years and had started work at the Home prior to the passage of the Civil Service Reform Act.

It is my view that as federal employees each day of service entitled them to certain cumulative benefits. As time passed, their property interest in their jobs became more established and less vulnerable to an arbitrary and capricious action by the government. Thus it would seem that prior to an involuntary dismissal from their positions these long standing government employees should be allowed some form of confrontational hearing, at the minimum a post-termination hearing. Such a hearing requirement would be satisfied by an arbitration proceeding provided under the collective bargaining agreement pertaining to the plaintiffs in this case.

### Background

This court conducted a number of evidentiary hearings to determine the facts. From the record, it is clear all of the plaintiffs were considered good employees and had no prior disciplinary complaints or actions taken against them while working at the Home. All were long time employees preforming unskilled but vital tasks for the Home.

Plaintiff Joseph Steppe was a night administrator when he was removed from the Home. He started work at the Home in January of 1977, as a temporary grounds keeper. Through his nine years of employment at the Home, up until the immediate incident, Steppe had no disciplinary problems, and had consistently received favorable reviews of his work.

Michael Little started work at the Home in 1973, in the housekeeping department. While employed at the Home, Little advanced to the position of ambulance driver, which he held at the time of his termination.

Charlie Ward started at the Home in 1970 in the housekeeping department. Ward received a number of promotions and eventually became a tractor operator, the position he held at the time of his termination. Throughout his eighteen years at the Home Ward received good job performance ratings and did not have any discipline problems.

Jan Steadman worked at the Home for ten years as a light equipment repairman. During that time Steadman received outstanding job performance ratings and a letter of commendation. He testified that

until his removal he had no disciplinary problems.

Owen Horton worked at the Home as a mason for six and one-half years without any disciplinary problems until this incident.

In late 1985, Brenda Fuentes, an employee at the Home, was arrested by the D.C. Metropolitan Police on charges of possession and distribution of controlled substances. Shortly afterwards, Ms. Fuentes was questioned by Home investigators about her involvement with drugs.

Miss Fuentes told Home investigators that at least eighteen other Home employees had used drugs, either outside work or at work. The five plaintiffs in this case were among those implicated by Miss Fuentes.

Upon receiving evidence of plaintiffs' alleged misconduct, the Home conducted a preliminary investigation of the charges. Home investigators interviewed each of the plaintiffs. At the conclusion of the investigation, the Home issued a notice of proposed removal to each plaintiff. No pretermination hearing was held. After receiving their final notice of removal, all five plaintiffs chose to challenge their removal.

All of the plaintiffs in one way or another made good faith efforts to exhaust the post-removal grievance procedures available to them under the Home's rules and later under the union contract.

Two of the plaintiffs, Charlie Ward and Owen Horton, attempted unsuccessfully to appeal their removal to the Governor. The Union, which had agreed to act on behalf of Ward, failed to file the appeal with the Governor within the stated time period despite Ward's timely request of the Union representative to do so. The failure to file the appeal was solely the fault of the Union representative, James Sampson, and was a breach of the Union's duty to fairly represent Ward.

Owen Horton retained Kenneth Mundy, a highly respected local attorney, to represent him in his post termination process. Mr. Mundy testified that he did not receive the Home's notice of Horton's removal un- til after the time to appeal that removal had expired. Mr. Mundy proceeded to file an appeal to the Governor in what would have been the allotted time period if the Home's action had been taken on the day Mundy received the notice. The court credits Mr. Mundy's testimony and finds that Horton's appeal to the Governor was in fact timely.

The remaining plaintiffs made timely appeals to the Governor, all of which were reviewed and rejected. Plaintiff Steadman requested the Union's assistance in invoking arbitration. Although the Union agreed to request arbitration on Steadman's behalf, the Governor denied the Union's request, maintaining that it had received the request two days late. Since the Union served as Steadman's exclusive representative in invoking arbitration, its failure to proceed in a timely manner was a breach of the Union's duty of fair representation.

When plaintiffs Joseph Steppe and Michael Little sought the Union's assistance in proceeding with arbitration, the Union's business manager, James Sampson, advised them that they also had the option of going directly to Federal Court to contest their removal. This court credits the courtroom testimony of Sampson that he gave such advice. Steppe and Little fully corroborate Sampson's testimony. Sampson claimed that since he was new in his position as Union manager and lacked experience in Home personnel matters, he relied on advice from Brock Fowler, the Home's Supervisory Personnel Management Specialist. I am not so sure that the advice came from Fowler, since he denies giving such advice. Since it is immaterial whether or not Fowler so advised Sampson, I have elected not to decide this credibility issue.

On the basis of the testimony outlined above, this court finds that Steppe and Little were misled by an authorized Union official as to their rights under the collective bargaining agreement. Given that these plaintiffs are not highly educated and are not well versed in labor law, this court cannot hold them responsible for the conse-

quences of following advice given them by the Union.

The evidence is clear that the Union was willing to invoke arbitration on behalf of Steppe and Little. Steppe and Little at all times sought redress for their dismissal and tried to pursue every procedural avenue available to them. Indeed, Steppe and Little filed suit in this court in order to pursue their rights and obtain reinstatement.

The defendant contends that even if plaintiffs were diligent in pursuing their due process rights, they have been foreclosed because they did not assert them timely. Further, it is defendant's position that even if the plaintiffs were misled by Union and government officials such actions do not excuse plaintiffs' untimely requests.

The Home relies on *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), for the proposition that these plaintiffs are not entitled to judicial review of adverse personnel actions taken against them. Under *Fausto* the Supreme Court held that excepted service non-preference eligible civil service employees were not entitled to judicial review of an adverse personnel action. *Id.,* 108 S.Ct. at 673. Such review was precluded by the comprehensive scheme for administrative and judicial review set forth in the Civil Service Reform Act. *Id.*

Defendants reliance on *Fausto* is misplaced. In *Fausto,* the Supreme Court did not address the wrongful denial of the grievance process due a federal employee under a collective bargaining agreement. In the instant case the five plaintiffs were prevented from employing the grievance procedures in their agreement. The Home cannot argue that despite such a finding, these plaintiffs have no redress whatsoever. To do so would render a collective bargaining agreement meaningless, and would allow an agency or a union to void the agreement by arbitrarily refusing to process an otherwise proper employee grievance of an adverse action. Without a remedy, these basic rights of plaintiffs as

well as all government employees similarly situated would be nonexistent.

The Supreme Court has recently decided the issue of a federal employee's remedies for a breach of the Union's duty of fair representation under a collective bargaining agreement with a federal agency. *Karahalios v. National Federation of Federal Employees,* —— U.S. ——, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989). In that case the Supreme Court held that while Title VII of the Civil Service Reform Act of 1978 ("Title VII") does not give employees the right to a court action where the union has breached its duty of fair representation, employees under a collective bargaining agreement could pursue such a claim before the Federal Labor Relations Authority.

*Karahalios* makes clear that Title VII imposes a duty of fair representation on unions representing federal employees and renders a breach of such a duty an unfair labor practice. 5 U.S.C. §§ 7114(a)(1) and 7116(b)(8). Title VII also affords an aggrieved employee an impartial forum in which to protect his rights under an agreement. 5 U.S.C. § 7118.

■ Here, where it is alleged the Union breached its duty of fair representation to plaintiffs Ward, Steadman, Steppe, and Little, it is clear these plaintiffs have an explicit avenue for redress under Title VII. Since this is an administrative right, these plaintiffs must pursue their cause of action before the appropriate administrative body. Although I cannot adjudicate the merits of plaintiffs' removals, I am able to provide them with the administrative processes that they have been wrongly denied.

Plaintiffs have made out a particularly strong case for this court to exercise its equity jurisdiction. The five plaintiffs have been discharged from jobs they had performed well over many years. The sole basis for their discharge was the allegation of illegal drug use. Support for these allegations comes largely from the testimony of a single informant who had been charged with illicit drug dealing and who, by cooperating with the investigators at

the Home, was attempting to mitigate her criminal liability.

While I did not delve too deeply into these allegations at the hearing, it is clear that the informant's statement dealt with alleged drug use by plaintiffs which, in many instances, took place a number of years ago. At no time did the informant undergo cross examination and her allegations in certain instances were without corroboration. There may even be a question as to how seriously the Home took these allegations, since in one case, that of Owen Horton, the Home was willing to reduce the proposed removal to a 30–day suspension if Horton would confess his own drug use and "finger" other co-employees. This Horton refused to do because he believed he had responded truthfully in denying any drug use. Indeed, all the plaintiffs have unequivocally denied the allegations made by the informant.

This court also notes that while the charges against these plaintiffs are criminal in nature, none of the plaintiffs has been indicted for illegal drug activity. Again, since the substantive charges are not now before me, I need not and do not make any determination as to their validity.

Evidence presented during the evidentiary hearings refute defendant's contention that plaintiffs have waived their rights by not timely pursuing them. In four instances the untimely pursuit of plaintiffs' remedies under the contract was legally excusable and was not the fault of plaintiffs. In three of these cases the untimeliness was caused by misinformation supplied to the plaintiffs by a Union official. In the fourth case the Union official failed to act in a timely manner despite his promise to act on behalf of the employee. Finally, I find in plaintiff Horton's case that his counsel did not receive notice of the action taken against Horton until after the filing deadline for an appeal to the Governor had expired. As a result, the Governor's refusal of Horton's appeal is in error.

 This court finds that each of the individuals acted in good faith and used their best efforts to exercise their rights under the Home's grievance procedures and the collective bargaining agreement. The plaintiffs occupy low-level non-professional positions. They are neither rocket scientists nor Philadelphia lawyers. They often rely on verbal instructions provided to them by persons in authority. They clearly have the right to rely on such representations made by their Union representative. It is unfair for a government agency to penalize an employee whose legal representative under a collective bargaining agreement neglects to pursue contractual grievance procedures in a timely manner. This is particularly so where so much is at stake, namely, jobs which the plaintiffs have held for many years. Here the evidence shows that the Union found each of the plaintiffs' grievances meritorious and agreed to pursue their hearing rights under the collective bargaining agreement. Under these circumstances it would be unfair to penalize plaintiffs who have been misled as to the best way to pursue their grievances.

These five plaintiffs during their many years of employment at the Home performed well in their jobs and, except for this incident, would have continued in their government positions. In such a situation it is unfair for a government agency to dispense summarily with an employee's rights to pursue grievance procedures on the basis of a technical failure that was in no way their fault. This is another example of the employment of the "Gotcha" principle, an all too prevalent practice used often to deprive deserving people of valuable due process rights.

Where the atmosphere of today's society is charged with hysteria and fear over the current drug epidemic, we are all too susceptible to dispensing with basic rights due our citizens whenever drug related charges are made. In this case where the allegations are serious and the consequences severe, an employer should not be able to arbitrarily deny basic rights due its employees.

This is not to say that our citizens are not entitled to a drug-free work place. Those who violate our drug laws must be dealt with severely. Nevertheless naked

allegations of illicit drug use are not by themselves proof of such use and should not be allowed to deprive a citizen of valuable property rights without complying with due process standards.

This court simply cannot accept defendant's position that unskilled government employees with many years of service can be relegated to second class citizenship merely by labeling them excepted service non-preference employees. Under the defendant's reasoning a government employee could be deprived of his job without a due process hearing even though he may have been employed for over twenty years and was only months short of retirement.

The defendant has tenaciously resisted providing these plaintiffs with any form of a hearing. I do not believe that the institutions of this great government will fall by giving these five individuals the post-termination arbitration hearing as provided for under their Union collective bargaining agreement. All too often government agencies seek to dispose of a case through a procedural technicality rather than permit persons access to the administrative processes that have been established to afford them basic due process rights. I sometimes wonder why our government has established such elaborate and indeed costly administrative processes when it so often seeks to block their utilization on highly technical and often flimsy bases. Certainly our government can find some way of meeting its "kinder and gentler" standard and redirect its efforts to deal with matters such as the one before me on their merits.

Accordingly, I am remanding this case to the Home and directing that it take all steps necessary to provide plaintiffs with a hearing as provided under their collective bargaining agreement. The defendant must also provide plaintiff Horton with a new notice of employment termination and permit him to have all the grievance procedures that he is entitled to under the Home's rules. In the event of an adverse ruling by the Home, Horton shall have the same hearing rights under the collective bargaining agreement as will be provided the other plaintiffs.

I shall retain jurisdiction to ensure that this order is carried out and to provide such other relief as may be appropriate.

An appropriate order accompanies this opinion.

ORDER

Upon consideration of the entire record in this case and the court's opinion of this date, it is

ORDERED that defendant take all steps necessary to provide plaintiffs Steppe, Little, Steadman, and Ward with a post-termination arbitration hearing as provided for under the collective bargaining agreement between the Home and the Union; and it is

FURTHER ORDERED that defendant provide plaintiff Horton with a new notice of employment termination and permit Horton to have all the grievance procedures that he is entitled to under the Home's rules and the collective bargaining agreement. In the event of any adverse rulings from the Home, Horton shall have the same arbitration rights under the collective bargaining agreement as are provided to the other plaintiffs under this order.

This court shall retain jurisdiction to ensure enforcement of this order and to provide such other relief as may be appropriate.