Andy F. LUTHER

v.

TENNESSEE VALLEY AUTHORITY.

No. CIV–2–88–367.

United States District Court,
E.D. Tennessee,
Northeastern Division.

April 25, 1989.

Michael A. Faulk, Church Hill, Tenn., Thomas D. Shelburne, Rogersville, Tenn., for plaintiff.

Justin M. Schwamm, Sr., Asst. Gen. Counsel, Harriet A. Cooper, Sr. Litigation Atty., Helen De Haven, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

Andy F. Luther, formerly a boilermaker and later a flagman for the Tennessee Valley Authority (TVA), brings this action for reinstatement to suitable employment, compensatory damages, and punitive damages, alleging that TVA wrongfully discharged him from its employment on September 3, 1987, in retaliation for his having claimed workman's compensation benefits. He also alleges that TVA is guilty of fraud and outrageous conduct. The case is now before the Court on TVA's motion to dismiss or, alternatively, for summary judgment. Rules 12(b)(6), and 56(b), Federal Rules of Civil Procedure. (Doc. 3).

Many of the background facts are undisputed. Plaintiff Luther was working as a boilermaker/welder at TVA's John Sevier Steam Plant in Rogersville, Tennessee, in May of 1984, when he was seriously injured in a fall. As a result of his injury, Mr. Luther was awarded temporary disability payments ("FECA" benefits) through the United States Department of Labor's Office of Workers' Compensation Programs (OWCP) which lasted for over three years. During this time, Mr. Luther performed no work for TVA.

In February of 1987, the OWCP solicited an opinion from Mr. Luther's treating physician, Robert T. Strang, Jr., concerning any objective evidence of continuing disability. In a letter dated April 20, 1987, Dr. Strang reported that there was no "objective" evidence of orthopedic or neurosurgical disability from his cervical or lumbar spine.

Acting on the basis of Dr. Strang's report, the OWCP issued a notice of proposed termination of benefits on June 12, 1987. On August 5, 1987, these benefits were, in fact, terminated.[1]

In the meantime, in what may have been an unrelated course of action, Rodney E. Caldwell, a TVA Rehabilitation Counselor, apparently sent an OWCP Work Restriction Evaluation Form, OWCP–5, to a Dr. Joe L. Luna, who had at one time been treating the plaintiff for his disability. The record contains an evaluation for Mr. Luther's physical condition dated June 29, 1987.[2]

On July 24, 1987, TVA sent a letter to Mr. Luther offering him employment as a flagman and indicating that this job would be within the limitations placed upon him by Dr. Luna. Although he knew full well he had not seen Dr. Luna since 1985, the plaintiff accepted the proffered employment, afraid that failure to accept it would result in the termination of his disability benefits. On August 11, 1987, Mr. Luther was examined by TVA's own physician, a Dr. Hooper, who conditionally approved his return to work. Dr. Hooper's restrictions included avoiding lifting more than fifty pounds occasionally or twenty-five pounds

---

1. Mr. Luther appealed the cessation of FECA benefits. On April 8, 1988, his benefits were resumed and he was awarded back benefits as well.

2. It is this medical evaluation which forms the basis of Mr. Luther's fraud claim. He alleges that TVA forged the form and the signature of Dr. Luna. In support of this contention, he offers a letter from Dr. Luna to the effect that he had neither seen nor evaluated Mr. Luther since August of 1985. However, Dr. Luna's secretary has provided TVA with an affidavit that it was she who signed Dr. Luna's name to the form with his authorization.

frequently, and avoiding prolonged sitting or standing—"must change positions."

Mr. Luther alleges, and TVA does not dispute, that, in fact, the job he was given involved standing for seven hours a day and moving stop signs affixed to sawhorses weighing approximately forty to forty-five pounds. Mr. Luther started working on August 25, 1987, and attempted to perform his duties. He was only able to work for three days. On August 27, 1987, he returned to his personal physician suffering from an aggravation of his pre-existing injuries to his back, neck, and knee. On September 1, 1987, he obtained a statement from his doctor that he was unable to perform his job as flagman. On September 3, 1987, TVA discharged him because he was "not regularly available for work."

In this lawsuit, Mr. Luther is not seeking disability benefits for his new injuries but compensation for wrongful discharge, fraud, and outrageous conduct. He claims that TVA reinstates disabled workers who are receiving FECA benefits to duties which violate their medical restrictions as a device to be able to later discharge them and avoid further obligations for disability compensation. He also contends that, in fact, there were less physically demanding jobs at the Rogersville facility which he could have performed if the reinstatement had been in good faith.

■ TVA moves to dismiss the fraud and outrageous conduct charges for failure to state a claim. The Court agrees. Mr. Luther's fraud charge is that an agent for TVA falsified Dr. Luna's report in order to offer him work he could perform within medical restrictions and then told him that the duties of the position he was being offered could be performed within the medical limitations prescribed by Dr. Luna, knowing full well this statement was false. Even if TVA were not able to counter the forgery contention with the affidavit of Dr. Luna's secretary, the Court cannot be expected to believe that Mr. Luther *reasonably relied* upon restrictions prescribed by Dr. Luna when he knew perfectly well he hadn't seen this doctor in two years. Plaintiff's claim of fraud appears to be wholly

insubstantial. In addition, the facts of this case do not support a claim of outrageous conduct, or conduct beyond the pale of decency. *See*, for example, *Dunbar v. Strimas*, 632 S.W.2d 558 (Tenn.App.1981). Accordingly, the charges of fraud and outrageous conduct will be dismissed.

■ TVA also moves to dismiss any claim for reinstatement to employment. It argues that because Mr. Luther is currently drawing temporary disability payments, and has not notified TVA that he is able to return to work, he cannot now sue for reinstatement. And, even if he were eligible for reinstatement, any failure on TVA's part to reinstate a person who had recovered from a work-related injury must be challenged through the Office of Personnel Management's administrative procedures and not through a lawsuit such as this one. This contention appears to be correct and any claim for reinstatement will also be dismissed.

■ Mr. Luther's real claim in this lawsuit appears to be that it was unfair to discharge him when he was hired back into a job that was too physically demanding for his medical condition. In this contention, he may well be correct. However, Mr. Luther's employment was covered by a collective bargaining agreement between TVA and the Tennessee Valley Trades and Labor Council and it is undisputed that Mr. Luther failed to file a grievance over his discharge. TVA argues correctly that this failure to pursue administrative remedies is fatal to the instant suit.

■ Nevertheless, Mr. Luther contends he is still entitled to a common law cause of action for wrongful discharge because Tennessee law, as a matter of public policy, provides relief for workers discharged in retaliation for their having filed a claim for workman's compensation. There are two problems with this argument. First, Mr. Luther was a federal employee receiving FECA benefits not workman's compensation and any challenge regarding his discharge is controlled by federal law. Federal employment is governed by the Civil Service Reform Act of 1978 (CSRA), which

provides the mechanism by which federal employees obtain protection from and review of adverse personnel actions. And while the CSRA does not provide remedies for all possible adverse personnel action to all employees such as the plaintiff who are or were in the government's "excepted service," the United States Supreme Court has now made it clear that in enacting the CSRA and granting remedies to some but not others, Congress intended to deny federal employees any non-CSRA judicial relief in personnel matters. *See United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The Court understands this ruling to preclude it from fashioning a state law remedy for the plaintiff.

■ However, even if the Court were willing to entertain a common law claim for retaliatory discharge, the second problem with the plaintiff's claim is that he has offered absolutely no evidence that his discharge, even if terribly unfair, was in retaliation for his having received FECA benefits. And nothing in the facts of this case would give rise to such an inference. Mr. Luther received disability benefits for over three years before TVA offered him rehabilitative re-employment. He was back on the job for only three days and injured himself again. Now he is again receiving disability benefits. The Court fails to see what TVA had to gain if it deliberately brought him back to work in a position that violated his medical restrictions.

In summary, the Court finds TVA's motion to be well-taken. Judgment is hereby GRANTED in favor of the defendant Tennessee Valley Authority and this action is DISMISSED.