## NATIONAL ASSOCIATION OF POSTMASTERS OF the U.S., Plaintiff,

v.

## Marvin RUNYON et al., Defendants.

### Civ. A. No. 93–0115 (CRR).

United States District Court, District of Columbia.

May 25, 1993.

Jules Bernstein and Sarah Lipsett of Bernstein and Lipsett, Washington, DC, for plaintiff.

Jay B. Stephens, U.S. Atty. for the District of Columbia, John D. Bates, Asst. U.S. Atty., and Douglas A. Wickham, Asst. U.S. Atty., Washington, DC, and Karen A. Intrater, Susan Milton, and Brian Reimer, Employee Relations Law of the U.S. Postal Service of Washington, DC, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I.  INTRODUCTION

The above-captioned case was transferred to the undersigned Judge on March 9, 1993, from the docket of the Honorable Gerhard A. Gesell.  Now pending in the case is the Plaintiff's Motion for a Preliminary Injunction, the Defendants' Motion for Summary Judgment, and the Plaintiff's Cross–Motion for Summary Judgment.  The Court heard argument on the parties' respective motions on May 18, 1993.  At the hearing, the parties agreed that there were no genuine issues as

to any material facts. The parties also agreed that the Court had before it all of the relevant evidence in the case, and that the Court could consolidate the hearing with a trial on the merits of the case pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.

The Court, after careful consideration of the submissions of the parties, the exhibits, the arguments of counsel, the applicable law, and the entire record herein, concludes that the Defendants fully complied with their obligations under the Postal Reorganization Act, 39 U.S.C. § 1004(b) ("PRA"), and the 1974 Agreement ("the Agreement") between the Plaintiff and the Defendants which sets forth, in detail, the Defendants' obligations under § 1004(b). The exhibits presented to the Court indicate that the Plaintiff had an ample opportunity, as required by § 1004(b) and the Agreement, to participate and make recommendations in the recent changes enacted by the United States Postal Service ("USPS"). The Court shall therefore enter Judgment for the Defendants. The following shall constitute the Court's Findings of Fact and Conclusions of Law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The Plaintiff, the National Association of Postmasters of the United States ("NAPUS"), is an organization of postmasters employed by the USPS. NAPUS brought suit against Marvin Runyon, Postmaster General of the United States, ("Runyon") and the USPS, because of certain actions taken by the USPS in 1992. The relevant facts are undisputed by the parties. On July 6, 1992, Runyon took office as Postmaster General. At that time, the USPS faced a projected deficit of more than two billion dollars. Almost immediately, Runyon directed senior management officials to begin devising plans for the streamlining and restructuring of the USPS.

On August 7, 1992, Runyon made a public announcement outlining the plans for streamlining the USPS. The plans were designed to reduce layers of management, resulting in the elimination of approximately 30,000 positions. No postmaster positions were included in the planned streamlining. At the same time, Runyon announced that many employees, including postmasters, would be offered certain incentives to take early retirement. The plan was designed to place those employees who were displaced by the restructuring into the vacancies created by early retirement. Runyon also imposed a temporary hiring freeze, which affected both postmasters and other postal employees.

The early retirement deadline was first set at October 3, 1992, but later extended to November 20, 1992. On November 13, 1992, the hiring freeze was lifted, and the USPS issued a set of employee placement guidelines, replacing previous regulations. The new guidelines focused on the placement of those employees whose positions had been eliminated by the restructuring. Although the new guidelines made some allowance for the advancement of postmasters, those employees who had been displaced were given preference for the vacant postmaster positions created by the early retirement offer. This policy of preference was contrary to the employment regulations then in effect, which extended to postmasters the right to compete for any vacant postmaster position on a strictly competitive, merit-based system.

The Defendants began filling vacant postmaster positions pursuant to the new employment guidelines, and the Plaintiff brought suit on January 15, 1993. The Plaintiff concedes that the Defendants acted within their authority in conducting the restructuring, offering early retirement, and issuing new placement guidelines. The Plaintiff claims, however, that the Defendants failed in their duty to consult with the Plaintiff and permit it to "participate fully" in the development and execution of the new plans. The Plaintiff seeks declaratory relief and a prospective injunction that would prohibit the Defendants from continuing the new promotion procedures that were allegedly adopted without the necessary participation by the Plaintiff.

## III. BOTH THE RELEVANT STATUTE AND CASE LAW INDICATE THAT THE PLAINTIFF HAS STATED A LEGITIMATE CAUSE OF ACTION OVER WHICH THIS COURT HAS SUBJECT MATTER JURISDICTION.

The Plaintiff relies upon § 1004(b) of the PRA and the Agreement signed by the par-

ties in 1974 as an explication of the Defendants' duties under § 1004(b). § 1004(b) provides, in pertinent part:

> The Postal Service shall provide a program for consultation with recognized organizations of supervisory and other managerial personnel.... [S]uch organization or organizations shall be entitled to participate directly in the planning and development of pay policies and schedules, fringe benefit programs, and other programs relating to supervisory and other managerial employees.

The 1974 Agreement recognized NAPUS as a legitimate organization within the meaning of § 1004(b) and contained a method of implementation of § 1004(b). The Agreement provides, in relevant part:

> 1. The provisions of this Agreement apply to pay policies and schedules, fringe benefit programs, and other programs relating to supervisory and other managerial employees.... They shall include all programs which determine:
>
> a) rates of pay and all other benefits provided to supervisory and other managerial employees such as leave, insurance coverage, and retirement benefits ...;
>
> b) procedures used to evaluate job performance by supervisory and other managerial employees including procedures used to determine promotions;
>
> c) grievance and appeal procedures for supervisory and managerial employees; and
>
> d) classification of supervisory and other managerial employees for purposes of pay or degree of responsibility and authority.

*See* Plaintiff's Motion for Preliminary Injunction, Exhibit A, at 2–3.

■ The initial question the Court must address is whether the Plaintiff has stated a claim upon which relief can be granted that is contained within the subject matter jurisdiction of the Court. Both parts of this question must be answered in the affirmative. First, the Court has subject matter jurisdiction over the dispute by virtue of 28 U.S.C. § 1339, which states that: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service." In this case, NAPUS relies on the PRA and the 1974 Agreement between NAPUS and USPS based upon § 1004(b) of the PRA. Clearly, the case "arises under" the PRA, because the Plaintiff's Complaint presents "nonfrivolous colorable claims" under the PRA. *National Ass'n of Postal Supervisors v. U.S. Postal Service*, 602 F.2d 420, 429 (D.C.Cir.1979).[1]

■ The Court must next consider whether the Plaintiff's cause of action states a claim for which judicial review is available and for which relief can be granted. This issue was squarely addressed by the Court of Appeals for this Circuit in the *Postal Supervisors* case, *id.* In *Postal Supervisors*, the Court of Appeals specifically considered the extent to which a party could seek review of the compliance of the USPS with the provisions of § 1004(b). The Court held that, although the USPS has "broad discretion" in conducting its affairs under § 1004, a party may seek *limited* judicial review of actions by the USPS to ensure that it has not abused that discretion. *Id.* at 432–33.

The Defendants suggest that the holding in *Postal Supervisors* has been called into question by *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). However, the *Fausto* doctrine is inapplicable in this case. The Plaintiff in *Fausto* was a federal employee who sought judicial review of a suspension received for job misconduct. The Supreme Court held that the Civil Service Reform Act ("CSRA") did not provide a cause of action for the review of the suspension. Although the CSRA contained extensive provisions for both administrative and judicial review of personnel decisions, it contained no provisions for review of the suspension of employees like the *Fausto* Plaintiff. The Supreme Court reasoned that the CSRA "established a comprehensive system" for the review, both administratively and judicially, of personnel action taken against federal employees. Consequently, an omission of review

---

1. The Court need not consider whether other jurisdictional provisions apply in this case. *See, e.g.,* 39 U.S.C. § 409(a) ("Except [with respect to appeals of postal rate decisions], the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service.")

provisions in the Plaintiff's service category was "manifestation of a considered congressional judgment" that the Plaintiff in *Fausto* "should not have statutory entitlement to review...." *Id.* 484 U.S. at 449, 108 S.Ct. at 674.

The *Fausto* doctrine does *not* supersede the conclusions of the Court of Appeals in *Postal Supervisors.* First, *Fausto* involved the CSRA, not the PRA. Second, no provisions in the PRA can compare with the comprehensive scheme of the CSRA. *Compare* 5 U.S.C. §§ 7501–7514 (containing some of the provisions for the review of adverse actions under the CSRA) *with* 39 U.S.C. § 1208 (containing provisions for the review of contracts between the USPS and labor organizations).[2] As can been seen by a comparison of the statutes, the PRA does *not* have all-encompassing review provisions similar to the CSRA. As counsel for the Plaintiff noted at the oral argument in this case, the Plaintiff has absolutely no method *other* than a civil suit like the instant one to ensure that the Defendants do not exceed the bounds of their discretion in this matter. Finally, the rights and obligations contained within § 1004(b) and the Agreement made thereto are different from the typical grievance review procedures contained within the CSRA and other comprehensive labor statutes. Consequently, the Court is unwilling to ignore the clear meaning of our Court of Appeals in *Postal Supervisors* and concludes that the Plaintiff has stated a legitimate cause of action by claiming that the Defendants have violated § 1004(b) and the Agreement.

## IV. THE SUBMISSIONS OF THE PARTIES SHOW THAT THE DEFENDANTS FULFILLED THEIR OBLIGATIONS TO CONSULT WITH THE PLAINTIFF AND GIVE THE PLAINTIFF AN OPPORTUNITY TO PARTICIPATE IN THE FORMULATION OF THE NEW STRUCTURE AND PROCEDURES OF THE USPS.

■ The *Postal Supervisors* case sets out the standard by which this Court must determine if the Plaintiff was given the opportunity "to participate directly," as required by § 1004(b), in the deliberations of the USPS. *Postal Supervisors* makes clear that:

> [T]he Postal Service must discuss its proposed ... policies with [NAPUS] before those policies go into effect, and we further agree that such discussions must be conducted in a meaningful, good faith manner. Under no circumstances, however, does this mean that the Postal Services can be forced to accept [NAPUS] proposals on ... policies or even be compelled to negotiate those policies with [NAPUS].

*Postal Supervisors,* 602 F.2d at 436. In other words, § 1004(b) requires the USPS to consult in good faith with NAPUS in formulating new policies and procedures of the type enumerated in § 1004(b).

The 1974 Agreement explains the manner of implementation of § 1004(b). The Agreement provides for regular meetings between representatives of NAPUS and the USPS. The USPS is required to inform NAPUS of any new studies, evaluations, policies or programs which fall within the scope of the Agreement.[3] NAPUS must be provided with the opportunity to study a proposal far enough in advance of the final decision to make recommendations, which must be given "full and fair consideration by the USPS in deciding whether to carry out the program...." *See* Plaintiff's Motion for Preliminary Injunction, Exhibit A, at 7. Further, "any proposed directives, regulations, or procedures to be used to implement ..." a program must be provided to NAPUS in advance of the adoption of any such implementing procedures. *Id.* at 8–9.

In this case, the record is clear that sufficient consultation and communication occurred between NAPUS and USPS during the restructuring to satisfy the requirements of § 1004(b) and the Agreement. The initial contact apparently occurred on July 22, 1992,

---

**2.** The Court also notes that 39 U.S.C. §§ 1201–1209, the only portion of the PRA that could be said to compose a "comprehensive labor law scheme," applies only to non-management em-

ployees. *See Blaze v. Payne,* 819 F.2d 128, 130 (5th Cir.1987).

**3.** *See supra* at 776–777.

when Joel S. Trosch, Assistant Postmaster General, Employee Relations Department, met with Kenneth Vlietstra, the Executive Director of NAPUS, and discussed the downsizing of the USPS. Trosch informed Vlietstra that the number of postmaster positions would not be reduced. He also informed Vlietstra that the USPS was considering offering early retirement in an effort to reduce the number of postal workers. Finally, Trosch advised Vlietstra that it was contemplated to include postmasters in the early retirement offering in order to create vacancies for the placement of employees displaced by the restructuring. On August 3, 1992, a similar meeting was held between Joseph J. Mahon, Jr., Vice President for Labor Relations of the United States Post Office, and James F. Miller, National President of NAPUS, at which similar topics were discussed.

On September 16, 1992, Mr. Mahon set a letter to Mr. Miller inviting NAPUS to name representatives to two of the restructuring teams. *See* Declaration of Joseph Mahon, Jr. ("Mahon Declaration"), Attachment 5. Mr. Miller named representatives to one of the teams. On October 21, 1992, Mr. Miller received a copy of the recommended staffing structures that had been developed by the teams established pursuant to Mr. Mahon's letter of September 16, 1992.

On October 5, 1992, Mr. Mahon sent Mr. Miller a draft of the proposed field placement policies and asked for input. Mr. Miller responded to the draft on November 6, 1992. *See* Mahon Declaration, Attachment 8. During the week of November 9, 1992, Mr. Mahon met with Mr. Miller and other officials and discussed the placement policies. The USPS did modify the placement procedures to some extent, based upon the comments and input of NAPUS and other management organizations. Postmasters would be permitted to compete for the vacated postmaster positions, but only on a limited basis when there were no qualified employees who had been displaced by the restructuring. *See* Declaration of David Cybulski, at 4. Further discussions occurred through December, 1992. In a letter to Mr. Mahon dated December 10, 1992, Mr. Miller asked one last time that the placement policy be changed, acknowledging that the issue of promotion opportunities "has been thoroughly discussed ..., and that you have considered our rational [sic] in presenting this issue." Mahon Declaration, Attachment 15.

The above-mentioned exhibits, together with the other affidavits and declarations submitted with the Defendant's Motion for Summary Judgment, establish that USPS has consulted NAPUS, in a meaningful way and in good faith, since July, 1992, as to the USPS restructuring and promotional policy. The Court finds that NAPUS has had the opportunity to "participate directly" in the process, as contemplated by § 1004(b) and the 1974 Agreement.

## V. CONCLUSION

Upon consideration of the Plaintiff's Motion for a Preliminary Injunction, the Defendants' Motion for Summary Judgment, the Plaintiff's Cross–Motion for Summary Judgment, the applicable law, the record herein, and the arguments of the parties at the hearing of May 18, 1993, the Court finds that the Defendants are entitled to Judgment against the Plaintiff. The Defendants afforded the Plaintiff an opportunity to participate in the recent restructuring of the USPS. Although the USPS did not fully adopt the recommendations of the Plaintiff, it did consider those recommendations in good faith as required by § 1004(b) and the 1974 Agreement. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.