186 F.3d 1158 (9th Cir. 1999)
 MARY GOLT, Individually and as Personal Representative of the Estate of John C. Golt, III,Deceased, and as Guardian for Anthony Golt and William Golt, minors,
Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, SHAWN RCY, JOHN DOES, 1 through 10,
Defendants-Appellees.
 No. 98-35318
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted July 15, 1999
Decided July 30, 1999
 
 William D. Jacobsen, Thompson, Jacobsen & Potts, Great Falls, Montana, for the plaintiff-appellant.
 George F. Darragh, Jr., Assistant United States Attorney, Great Falls, Montana, for the defendants-appellees.
 Appeal from the United States District Court for the District of Montana Paul G. Hatfield, District Judge, Presiding. D.C. No. CV-95-129-GF(PGH).
 Before: Thomas M. Reavley,[1] Arthur L. Alarcon and M. Margaret McKeown, Circuit Judges.
 OPINION
 ALARCON, Circuit Judge.
 
 
 1
 Plaintiff Mary E. Golt ("Mrs. Golt"), individually and as personal representative of the estate of her husband John C. Golt, III ("Mr. Golt"), appeals from the order and final judgment dismissing this action following the grant of summary judgment in favor of the United States and Shawn Dorcy (collectively "the Government"). Mrs. Golt contends that the district court erred in dismissing her claim against the United States pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. S 1346(b), and her claim against Shawn Dorcy pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), based on the alleged wrongful termination of Mr. Golt's employment with the Army Air Force Exchange Service ("AAFES") at Malmstrom Air Force Base in Great Falls, Montana. While conceding that, under the law of this circuit, 5 U.S.C. S 7121(a)(1) preempts employment related claims which fall within collective bargaining agreements, Mrs. Golt contends that "Federal employers should not be entitled to the benefit of S 7121(a)(1) preemption where they have failed to adhere to the [Civil Service Reform] Act's notice requirements."
 
 
 2
 We affirm because we conclude that the CSRA preempts state law wrongful termination claims filed pursuant to the FTCA or under Bivens. We also hold that the failure of AAFES to inform Mr. Golt annually of his right to request representation at any disciplinary proceeding does not preclude the Government from asserting CSRA preemption as a defense to a FTCA or Bivens claim.
 
 
 3
 * The facts pertinent to this appeal are undisputed. Mr. Golt worked as a civilian employee of the AAFES at Malmstrom Air Force Base from August 21, 1978 through January 26, 1994. On January 14, 1994, Mr. Golt was placed on administrative leave by Dorcy after Mr. Golt signed a statement admitting that he had removed a bottle of vodka from the AAFES facility at Malmstrom Air Force Base without paying for it. On January 18, 1994, during an interview conducted by the AAFES to investigate the alleged theft, Mr. Golt admitted that he had removed a total of $2,215.50 worth of property, primarily alcoholic beverages, without paying for them over a two-year period.
 
 
 4
 On January 19, 1994, Dorcy transmitted a memorandum to Mr. Golt styled as an Advance Notice of Separation for Cause. In the notice, Dorcy informed Mr. Golt that his services would be terminated after seven days because of his admitted dishonest conduct. Mr. Golt was also advised that he would have the opportunity to explain his views orally or in writing concerning the allegations of dishonesty within five calendar days. The notice also stated in bold letters:
 
 
 5
 THIS COPY MAY BE FURNISHED TO YOUR EXCLUSIVE REPRESENTATIVE, THE AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO.[2]
 
 
 6
 Mr. Golt acknowledge receipt of the notice on January 19, 1994. Mr. Golt did not submit a reply to the advance notice.
 
 
 7
 On January 25, 1994, Dorcy delivered a memorandum labeled a Final Notice of Separation for Cause. Dorcy informed Mr. Golt that his employment would be terminated on the close of business on January 26, 1994. The final notice also advised Mr. Golt that "[t]he negotiated grievance procedure is the sole procedure available to the employee for seeking relief from the disciplinary action taken.".[3]
 
 
 8
 Mr. Golt signed a copy of the final notice on January 25, 1994. Mr. Golt did not avail himself of the procedures negotiated by the American Federation of Government Employees, AFL-CIO with the AAFES. Mr. Golt died on February 25, 1994 as a result of accidental acute carbon monoxide poisoning.
 
 
 9
 The American Federation of Government Employees Worldwide Consolidated Bargaining Unit ("AFGE") represented the AAFES employees in negotiating a collective bargaining agreement with the AAFES, including workers, such as Mr. Golt, who were not union members. Mr. Golt was not a member of the AFGE. Nevertheless, Mr. Golt was entitled to representation at any disciplinary proceeding by a representative of the AFGE.
 
 
 10
 Under the CSRA, an employee of a federal agency is limited to the grievance procedures in the collective bargaining agreement negotiated with his or her employer in resolving grievances that may result in disciplinary action. See 5 U.S.C. S 7121(a)(1). Section 7121(a)(1) provides in pertinent part:
 
 
 11
 [A]ny collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e) and (g) of this section, the procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.
 
 
 12
 The AAFES is a nonappropriated fund instrumentality of the United States. Pursuant to 5 U.S.C. S 7103(a)(3), the labor-management relations provisions of the CSRA apply to employees of nonappropriated fund instrumentalities.[4]
 
 
 13
 The labor-management provisions of the CSRA also cover employees of the bargaining unit who are not union members.
 
 
 14
 A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.
 
 
 15
 5 U.S.C. S 7114(a)(1).
 
 
 16
 The master collective bargaining agreement ("CBA") between the AAFES and the AFGE creates the grievance procedure for an employee who has been separated for cause. Section 7 of the CBA sets forth the following procedures:
 
 
 17
 Step 1 - Informal Grievance: The informal grievance shall first be taken up by the grievant (and representative, if he elects to have one) orally or in writing with the appropriate supervisor, that being the person having the authority to resolve the complaint. The informal grievance must be initiated within 15 calendar days of the day the incident occurredthat gave rise to the grievance or within 15 calendar days of the day the grievant should have reasonably been expected to be aware of the incident that gave rise to the grievance. An on-going event that may give rise to a grievance may be grieved at any time, provided that at the time the grievance is filed the event complained of must have last occurred 15 calendar days before the grievance is filed. A decision will be given to the grievant within 7 calendar days after presentation of the grievance.
 
 
 18
 Step 2 - Formal Grievance: If the grievant is dissatisfied with the decision given on the "informal grievance," or if no decision is received within 7 calendar days, and the grievant decides to advance the grievance, the grievance shall be reduced to writing by the grievant and initiated as a formal grievance within 7 calendar days after receipt of the decision on the informal grievance or the deadline for filing a decision, if none is filed. The formal grievance shall be presented by the grievant or his representative to the next level supervisor. Upon receipt of the formal grievance, the supervisor shall meet with the grievant and the grievant's representative, discuss the grievance, and render a written decision within 7 calendar days.
 
 
 19
 Step 3: If the grievance is not settled at Step 2 and it is decided that the grievance will be advanced, the grievant or his representative shall forward the grievance to the Principal Management Official for review within 10 calendar days. The Principal Management Official may be any person designated by AAFES who has not decided a prior step. The Principal Management Official will review the grievance, consulting with the Step 2 supervisor if necessary, the grievant and/or the grievant with his Union representative and give the grievant and/or the Union representative his written answer within 10 calendar days after receipt of the grievance.
 
 
 20
 Step 4: If the parties agree to do so, the Union's representative and Management's representative will meet together with an impartial Mediator within ten (10) calendar days from the date of the decision rendered at Step 3 and the assistance of a Mediator from the Federal Mediation and Conciliation Service (FMCS) has been affirmed.
 
 
 21
 Step 5: If the grievance is not satisfactorily settled at Step 3, either the Union or the Employer may refer the matter to arbitration consistent with the time requirements of article 44, Section 2 (Arbitration). All time limits in this Article may be extended by mutual consent. Failure of the responding party to observe the time limits shall entitle the initiating party to advance the grievance to the next step with the exception of the step involving arbitration which may only be invoked by the Union or Employer. Claims of a failure to comply with this procedure may be raised as grievability/arbitrability issues. Grievances will not be maintained in the employee's Official Personnel Folder except those responding to disciplinary actions which have become final without right of further appeal and will be available only to persons who have a need to know.
 
 
 22
 Article 44 of the CBA permits an employee or the AAFES to refer the grievance decision to arbitration. The CBA provides that "[t]he arbitrator's award shall be final and binding subject to the review procedures of the Civil Service Reform Act of 1978." Mr. Golt did not initiate informal grievance proceedings with his supervisor, as required by Step 1 of the procedures set forth in the CBA, although informed of his right to do so by Dorcy, nor did Mr. Golt invoke the formal grievance procedure.
 
 
 23
 Mrs. Golt did not produce any sworn statement or any out-of-court declaration by Mr. Golt in which he explained the reason why he did not initiate an informal grievance procedure with Dorcy after receiving the Advance Notice of Separation for Cause and the Final Notice of Separation for Cause.
 
 
 24
 Mrs. Golt submitted the affidavit of Susan Goodman, a former employee of the AAFES at Malmstrom Air Force Base, in support of her opposition to the Government's motion to dismiss. Goodman was a co-worker of Mr. Golt until his employment was terminated.
 
 
 25
 Goodman alleged that "AAFES never notified me, and to the best of my knowledge never informed my co-workers at the AAFES Malmstrom facility, that we had any . . . right or any opportunity to be represented, under the terms of a collective bargaining agreement, on matters involving grievances or personnel policies or practices." She also alleged that "[t]o the best of my knowledge, no notices of collective bargaining rights were posted on the AAFES premises, nor did AAFES notify its employees of collective bargaining rights on an annual basis."
 
 
 26
 Goodman further alleged that she was informed on numerous occasions by AAFES supervisors and personnel office employees that "AAFES employees had no union rights and that our only recourse in matters involving personnel policies or practices or employee discipline was to report such matters to the AAFES personnel officer / human resources director, Barbara Crutchfield, who was a representative of AAFES management." No evidence was presented that Mr. Golt was told by any AAFES employees that he had no union rights, or that his only recourse in challenging any disciplinary action was to present his grievance to Barbara Crutchfield.
 
 
 27
 The Government concedes that the AAFES did not provide annual notification required pursuant to 5 U.S.C. S 7114(a)(3). Section 7114(a)(3) provides that"[e]ach agency shall annually inform its employees of their rights under paragraph (2)(B) of this subsection." Section 7114(a)(2)(B) provides that
 
 
 28
 [a] exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at . . . (B) any examination of an employee in the unit by a representative of the agency in connection with an investigation if --
 
 
 29
 (i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and
 
 
 30
 (ii) the employee requests representation.
 
 
 31
 Mrs. Golt filed this action on November 13, 1995 individually as the personal representative of Mr. Golt's estate, and as the guardian for their minor children. She sought damages for the alleged wrongful termination of Mr. Golt's employment against the United States under the FTCA, and against Mr. Dorcy pursuant to Bivens.
 
 
 32
 The Government filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. In an order dated March 12, 1997, the district court granted the Government's motion holding that because the CSRA preempted Mrs. Golt's FTCA and Bivens claims, it lacked jurisdiction over the action.5 Final judgment was entered on March 10, 1998. Mrs. Golt timely appealed.
 
 II
 
 33
 Mrs. Golt contends that the district court erred as a matter of law in concluding that it lacked jurisdiction over the FTCA and Bivens claims on the ground that the CSRA expressly provides the exclusive administrative remedy for the alleged wrongful termination of a federal employee whose agency has entered into a collective bargaining agreement with a union that represents all of the workers in a bargaining unit, including non-union members. She maintains that "an employer's failure to comply with the notice provisions of[5] U.S.C. S 7114(a)(3) precludes that employer from obtaining the benefits of CSRA preemption." We review de novo the question whether a district court correctly applied the relevant law in granting a motion for summary judgment. Lewis v. Sacramento County, 98 F.3d 434, 438 (9th Cir. 1996), rev'd on other grounds, 523 U.S. 833, 118 S.Ct. 1708 (1997).
 
 
 34
 Mrs. Golt has not cited any authority to support her contention that we may ignore the express language of a federal statute that provides the exclusive remedy for a party who seeks relief from an alleged deprivation of his or her rights. While it is true that S 7114(a)(2)(B) of the CSRA requires a federal employer to give its employees annual notice of their right to request union representation at an examination that may result in disciplinary action, the statute does not provide that an employer's failure to do so authorizes an employee to invoke a discrete remedy under the FTCA, or pursuant to federal common law. We have no constitutional grant of authority to amend the CSRA to invent such an exception to its application. Only Congress has that power.
 
 
 35
 In explaining the preclusive effect of the CSRA in United States v. Fausto, 484 U.S. 439 (1988), the Supreme Court stated that the CSRA was enacted to replace "the haphazard arrangements for administrative and judicial review of personnel action." Id. at 444. The Court further stated that "Congress responded to this situation . . . with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." Id. at 445.
 
 
 36
 In Saul v. United States, 928 F.2d 829 (9th Cir. 1991), we held that a district court lacks subject matter jurisdiction to consider FTCA or Bivens claims filed by an employee who is a federal employee. Id. at 835-42. We reasoned in Saul that "Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce." Id. at 840.
 
 
 37
 No showing was made by Mrs. Golt that her husband did not comply with Step 1 of the negotiated grievance procedure because he did not receive an annual notice that he was entitled to union representation at the informal and formal grievance proceedings set forth by the CBA. Although not expressly required by the CSRA or the CBA, Dorcy provided Mr. Golt with notice that he had the right to file an informal grievance with an appropriate supervisor and that his exclusive representative was the "American Federation of Government Employees, AFL-CIO."Mrs. Golt has also failed to demonstrate whether Mr. Golt failed to file an informal grievance because he was unaware that he had a right to do so, with the assistance of a union representative, or if he intentionally and voluntarily relinquished his right to initiate grievance procedures to challenge his termination after admitting that he was guilty of shoplifting.
 
 
 38
 We express no view regarding whether, in an action filed pursuant to the CSRA, a federal employee, who did not receive annual notification of his right to union representation, may obtain declaratory or other equitable relief addressing the question whether an employer must conduct disciplinary proceedings prescribed in a negotiated agreement where the employee's failure to comply with the deadlines for filing a grievance set forth in a collective bargaining agreement was caused by the lack of the notification required by S 7114(a)(3).
 
 CONCLUSION
 
 39
 The final judgment of the district court dismissing this action for failure to state a claim under the FTCA and Bivens because of the preclusive and preemptive effect of the CSRA is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.
 
 
 [2]
 The Advance Notice of Separation for Cause provides as follows:
 19 January 1994
 Subject: Advance Notice of Separation for Cause
 John Golt, III, Warehouse Worker, Malmstrom AFB, WA
 1. Reference paragraphs:
 a. 1-24a and b, 3-8, 3-14, 3-16, AR 60-21/AFR 147-15. Exchange Service Personnel Policies, 1 August 1979.
 b. ESM 15-4, paragraph 1-5, Standards of Conduct.
 c. Article 42, Master Agreement between AAFES and AFGE.
 2. This is to notify you that I propose to separate you from employment with the Army and Air Force Exchange Service for cause no earlier than 7 calendar days from the date you receive this advance notice.
 3. The specific reason for this proposed action is that on 14 January 1994, you removed on bottle of Popov Vodka from Malmstrom Class Six and left the facility without rendering proper payment. By your admission, in an interview taken 18 January 1994, over the past two years you have removed various products without rendering payment totaling, by your approximation, $2215.50. This is against AAFES policy and your misconduct is considered an act of dishonesty.
 4. I will give you the opportunity to explain the circumstances and express your views concerning the matters stated in the preceding paragraph. You have the right to submit a reply to this advance notice orally, in writing, or both, and to submit any affidavits supporting such reply. In you reply or replies, you may set forth any appropriate matters or explanations. If you choose to reply orally, you may be accompanied by a representative of your choice, if you so request. Any expense involved in making a reply will be borne by you.
 5. Your oral reply, should you choose to make one, will be summarized in a memorandum which you and I will sign. Any reply must be filed within 5 calendar days of your receipt of this notice of proposed action. If your written reply is mailed, it must be postmarked within the authorized 5 calendar day period. Upon your request and good cause shown, I may extend the reply period up to an additional 5 calendar days not to exceed a total period of 10 calendar days from the date you receive this advance notice. Any reply received within the authorized 5 calendar day period will be given full consideration before a final decision is made. I will make a final decision within 5 calendar days of my receipt of your reply; or if no reply is received within the authorized reply period, my final decision will be made within 5 calender days following expiration of the authorized reply period.
 6. Request you acknowledge receipt of this letter by signing and dating in the space provided on both copies and returning to me.
 Shawn Dorcy, General Manager
 Acknowledgment _____________________________ Date _______
 THIS COPY MAY BE FURNISHED TO YOUR EXCLUSIVE REPRESENTATIVE, THE AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO.
 
 
 [3]
 The Final Notice of Separation for Cause reads as follows:
 25 January 1994
 Subject: Final Notice of Separation for Cause
 John Golt, Warehouse Worker, Malmstrom AFB, MT
 1. Reference paragraphs:
 a. 1-24a and b, 3-8, 3-14, 3-16, AR 60-21/AFR 147-15, Exchange Service Personnel Policies, 1 August 1979.
 b. ESM 15-4, paragraph 1-5, Standards of Conduct.
 c. Article 42 and 43 Master Agreement between AAFES and AFGE.
 d. Advance Notice of Separation for Cause dated 19 January 1994.
 2. No reply was received from you in the timeframe [sic] allocated by the Advance Notice of Separation, therefore it is my final decision that you be separated from employment effective as of the close of business on 26 January 1994.
 3. The specific reason for this proposed action is that on 14 January 1994, you removed on bottle of Popov Vodka from Malmstrom Class Six and left the facility without rendering proper payment. By your admission, in an interview taken 18 January 1994, over the past two years you have removed various products without rendering payment, totaling, by your approximation, $2215.50. This is against AAFES policy and you misconduct is considered an act of dishonesty.
 4. The negotiated grievance procedure is the sole procedure available to the employee for seeking relief from the disciplinary action taken.
 5. You are requested to sign and date both copies of this letter as acknowledgment of receipt and return one copy to me.
 Shawn Dorcy, General Manager
 Signature _______Date _______
 
 
 [4]
 5 U.S.C. 7103(a)(3) provides in pertinent part:
 "[A]gency" means an Executive agency (including a nonappropriated fund instrumentality described in section 2105(c) of this title . . . .)
 
 
 [5]
 The district court treated the Government's motion as a motion for summary judgment because matters outside the pleadings were presented by the defendants.